[No. A048261. First Dist., Div. One. Jan. 31, 1991.]

LISA MILLSAP, Plaintiff and Appellant, v.
FEDERAL EXPRESS CORPORATION et al., Defendants and
Respondents.

**Counsel**

Burns & Burns and Ronald F. Burns for Plaintiff and Appellant.

Janssen, Malloy, Marchi, Needham & Morrison, W. Timothy Needham and John F. Shields, Jr., for Defendants and Respondents.

**Opinion**

**STEIN, J.**—Lisa Millsap was injured when her car was struck by an automobile driven by Christopher Pence. As relevant, Millsap brought an action against Pence and against North Country Express (NCE) and Federal Express Corporation (FEC) on the theory that Pence was an employee of NCE acting in the course and scope of his employment at the time of the accident, and that FEC had contracted with NCE for the work done by Pence;

i.e., the delivery of parcels, which had been flown by FEC to the local airport. The superior court entered judgment upon the motions of NCE and FEC for summary judgment, and Millsap appeals.

## I.

*This Court Lacks Jurisdiction to Hear the Appeal From the Judgment in Favor of FEC*

NCE and FEC filed separate motions for summary judgment. The motions were heard together. On July 18, 1989, the court ordered that summary judgment be entered in favor of FEC but did not mention its ruling, if any, on the NCE motion. Judgment was entered on the order on July 26 and notice of entry of judgment was mailed on August 7, 1989.

In the meantime, on *August 4*, Millsap moved for vacation of the order. Millsap stated a number of grounds in support of her motion, including the confusion engendered by the fact that the July 26 order ruled only on FEC's motion.[1] On October 13 the court ruled (1) that "The order granting Summary Judgment to Federal Express will remain in effect," and (2) that summary judgment was granted to NCE. Millsap's motion to vacate was denied on December 7, 1989, as was her accompanying motion for reconsideration. Judgment in favor of NCE was entered on the same day.

California Rules of Court, rule 2(a) provides, as relevant here, "a notice of appeal shall be filed on or before the earliest of the following dates: . . . (2) 60 days after the date of service of a document entitled 'notice of entry' of judgment or appealable order by any party upon the party filing the notice of appeal . . . ; or, (3) 180 days after the date of entry of the judgment."  ▮  In the present case, the earliest of these dates was October 7, 1989, i.e., 60 days after notice of entry of judgment was mailed. Rule 3(b), however, provides that where a motion to vacate has been filed, the time for filing a notice of appeal is extended "until the earliest of 30 days after entry of the order denying the motion to vacate; or 90 days after filing the first notice of intention to move to vacate the judgment; or 180 days after entry of the judgment." Here, the earliest of the relevant dates—and thus the last day for filing the notice of appeal—was *November 2, 1989*, 90

---

[1] Millsap stated as one of the legal bases for her motion to vacate, "The Court has failed to indicate which Defendant's Motion for Summary Judgment it has ruled upon. The Court appears to be considering the Motion filed by FEDERAL EXPRESS CORPORATION only. But both motions were argued and submitted at the same time and both are inextricably linked to such an extent that resolution of the Motion of . . . NORTH COUNTRY EXPRESS is imperative before Plaintiffs can ascertain in whose favor the Court has intended to rule and before Plaintiffs can make a determination as to whether their remedy is an appeal or writ."

days after Millsap filed her motion to vacate. Millsap, however, did not file her notice of appeal until *January 4, 1990.*

Millsap argues that the July 26 judgment was "incomplete, did not address the issues before the court, and contained a blatant and prejudicial falsehood which necessitated correction." These factors do not extend the time for filing. Millsap's remedy, which she followed, was to file a motion to reconsider and a motion to vacate. Such motions, however, do not dispose of the necessity of taking a timely appeal from the allegedly defective judgment or order; they merely permit a party an extension of time in which to take that appeal. Nor is it relevant that the July 26 order, which clearly entered judgment in favor of FEC, failed to mention NCE. "It is settled that the rule [that an appeal may not be taken from an "interlocutory" judgment] does not apply when the case involves multiple parties and a judgment is entered which leaves no issue to be determined as to one party." ■■■■ (*Justus* v. *Atchison* (1977) 19 Cal.3d 564, 568 [139 Cal.Rptr. 97, 565 P.2d 122]; overruled on other grounds in *Ochoa* v. *Superior Court* (1985) 39 Cal.3d 159, 171 [216 Cal.Rptr. 661, 703 P.2d 1].)[2]

It follows that Millsap's notice of appeal was not timely filed as to FEC. This court lacks jurisdiction to hear the appeal. (*Hollister Convalescent Hosp., Inc.* v. *Rico* (1975) 15 Cal.3d 660, 674 [125 Cal.Rptr. 757, 542 P.2d 1349].) The appeal will be dismissed.

## II.

### *The Trial Court Correctly Determined on the Uncontradicted Evidence That Pence Was an Independent Contractor*

■ The general rule—to which there are numerous exceptions—is that the hirer of an independent contractor is not liable to third parties for the contractor's negligence. (*Fonseca* v. *County of Orange* (1972) 28 Cal.App.3d 361, 365 [104 Cal.Rptr. 566].) ■ Here, the court ruled that NCE could not be held liable for Pence's negligence because it had hired Pence as an independent contractor.

---

[2] Millsap may have been attempting to raise the point that this exception to the one final judgment rule does not apply if the party involved in the purported judgment has such a unity of interests with another party that its interests cannot be finally determined until those of the uninvolved party are finally resolved. In such a case the judgment purported to be final as to one party is deemed no more than an interlocutory order. (See *Fleuret* v. *Hale Constr. Co.* (1970) 12 Cal.App.3d 227, 230 [90 Cal.Rptr. 557], involving a surety and a principal.) This rule has no application here, where, although one of two theories of defense asserted by FEC was identical to that asserted by NCE (i.e., that Pence was an independent contractor), the rights of FEC and NCE are not interdependent. Moreover, the court's ruling specified that it was based on an understanding that NCE was an independent contractor of FEC. Thus, the court did not rule on the defenses shared by FEC and NCE.

■ "Whether a person is an employee or an independent contractor is ordinarily a question of fact but if from all the facts only one inference may be drawn it is a question of law." (*Brose* v. *Union-Tribune Publishing Co.* (1986) 183 Cal.App.3d 1079, 1081 [228 Cal.Rptr. 620].) ■ Here, the trial court, granting summary judgment to NCE, determined that the only inference which could be raised from the facts was that Pence acted as an independent contractor rather than as an employee.

■ "An 'independent contractor' is generally defined as a person who is employed by another to perform work; who pursues an 'independent employment or occupation' in performing it; and who follows the employer's 'desires only as to the results of the work, and not as to the means whereby it is to be accomplished.' [Citations.] ■ The most significant factor in determining the existence of an employer-independent contractor relationship is the right to control the manner and means by which the work is to be performed. [Citations.] 'If control may be exercised only as to the result of the work and not the means by which it is accomplished, an independent contractor relationship is established.' [Citations.]" (*White* v. *Uniroyal, Inc.* (1984) 155 Cal.App.3d 1, 24-25 [202 Cal.Rptr. 141].)

■ In the present case NCE paid Pence to deliver packages to NCE's customers. It was undisputed that Pence and NCE operated on the understanding that Pence was an independent contractor. Pence used his own car (or the car of his parents) to deliver the packages, furnished his own gas and oil, furnished his own liability insurance, and paid for whatever car repairs were necessary. Pence was paid on a "per route" basis; i.e., he was paid a lump sum based on the distance traveled to deliver the packages he delivered. He would be called if there were packages available for delivery, or he would stop by to see if there was anything available. He received no employee benefits and no taxes were withheld by NCE from his paychecks. Pence submitted invoices to NCE at his convenience and was compensated based on the invoices he submitted at any given time. Other than to say "be careful" or to give him directions to a particular location, or possibly to tell him to deliver the packages in the order received, NCE did not instruct Pence as to how to make the deliveries or how to drive his car. Pence was required to obtain a signed confirmation of delivery which he then returned to NCE. NCE gave him a Federal Express Guide and a list of prices, apparently so that he could answer questions posed by the persons to whom the packages were delivered.

We do not view the facts that NCE instructed Pence to "be careful" or that NCE demanded that he show that he in fact delivered the packages by submitted confirmation forms, as indicating that NCE exercised the type of control over Pence's actions as to make him its employee.

■■■■ Nor do we see that any of the other facts asserted by NCE raise a triable issue as to whether Pence was anything but an independent contractor compensated on a piecemeal basis for deliveries made.[3] ■ "When one person is performing work in which another is beneficially interested, the latter is permitted to exercise a certain measure of control for a definite and restricted purpose without incurring the responsibilities or acquiring the immunities of a master, with respect to the person controlled. [Citations.] Even one who is interested primarily in the result to be accomplished by certain work is ordinarily permitted to retain some interest in the manner in which the work is done without rendering himself subject to the peculiar liabilities which are imposed by law upon an employer." (*Bohanon* v. *James McClatchy Pub. Co.* (1936) 16 Cal.App.2d 188, 199 [60 P.2d 510]; and see, also, *Fleming* v. *Foothill-Montrose Ledger* (1977) 71 Cal.App.3d 681, 686 [139 Cal.Rptr. 579].)

In *Bohanon*, for example, a newspaper deliverer was deemed an independent contractor notwithstanding that the newspaper company defined his route; prohibited him from distributing any other newspaper or periodical within his designated territory; demanded that he deliver the papers at the earliest possible time; prohibited him from selling, assigning or transferring any part of his route to another; use his best efforts to increase circulation; or follow a number of other like directions or prohibitions. ■■ In the present case the control exerted by NCE over Pence was considerably less than that in *Bohanon*. The situation in *Becker* v. *Industrial Acc. Com.* (1931) 212 Cal. 526 [298 P. 979] is somewhat closer. In *Becker*, the issue was whether a person to whom an attorney delivered a summons for the purpose of having it served on a defendant was the employee of the attorney. Noting that the attorney gave no instructions to the process server as to how or when the service of the summons should be made, that the server was paid for each completed service, that the attorney merely gave the server two possible addresses of the defendant to be served and that the server "had the right to adopt any means of travel which suited his convenience and was at liberty to act upon his own judgment in making the service of the summons" (*id.* at p. 531), the court found "no escape" from

---

[3] Although not argued by Millsap in her appellate briefs, it has also been stated that the power of an employer to terminate the employment at any time " 'is a strong circumstance tending to show the subserviency of the employee, since it is incompatible with the full control of the work usually enjoyed by an independent contractor. Perhaps no single circumstance is more conclusive to show the relationship of an employee than the right of the employer to end the service whenever he sees fit to do so.' " (*Brose* v. *Union-Tribune Publishing Co.*, *supra*, 183 Cal.App.3d at p. 1085.) The significance of this factor in the instant case, however, is minimal as it appears that, although Pence had an ongoing relationship with NCE, each time he picked up packages for delivery operated, in essence, as a new contract. At any time NCE could choose not to continue its relationship with Pence, but that choice would be more of a determination not to hire than a determination to fire.

the conclusion that the process server's status was that of an independent contractor. On such facts as were placed before the trial court we, too, see no question but that Pence acted as an independent contractor.[4]

## III.

### *NCE Was Not Prohibited From Delegating to Pence the Duties and Liabilities of Delivering Packages*

It has been held that the general rule of nonliability of an employer of an independent contractor for the contractor's negligence "is subject to exceptions of such magnitude as to leave only a small area in which the general rule operates." (*Fonseca* v. *County of Orange, supra,* 28 Cal.App.3d at p. 365; and see *Maloney* v. *Rath* (1968) 69 Cal.2d 442, 447-448 [71 Cal.Rptr. 897, 445 P.2d 513, 40 A.L.R.3d 1].)

Millsap, citing *Capitol Chevrolet Co.* v. *Lawrence Warehouse Co.* (9th Cir. 1955) 227 F.2d 169, argues that the rule of nonliability "has no application where a person has assumed the contractual duty to perform a service for another"; i.e., that NCE could not delegate to Pence liability for delivering packages on behalf of FEC. However, the court in *Capitol Chevrolet* went on to explain that this exception to the general rule of nonliability of an independent contractor "is based upon contractual relationships. One who contracts to perform an undertaking is liable to his *promisee* for the negligence of an independent contractor to whom he delegates actual performance." (*Id.* at p. 173, italics added.) Under the stated exception, NCE might be liable to FEC—its promisee—for Pence's negligence, but it incurred no liability to third parties such as Millsap.

Another argument is that liability resulting from Pence's delivery of packages is nondelegable because the operation is regulated by a public agency. The basis for this argument is found in section 428 of the Restatement Second of Torts: "An individual or a corporation carrying on an activity which can be lawfully carried on only under a franchise granted by public authority and which involves an unreasonable risk of harm to others, is subject to liability for physical harm caused to such others by the negligence of a contractor employed to do work in carrying on the activity."

This rule ordinarily applies where a public service corporation attempts to delegate its duty to an independent contractor. (See Rest.2d Torts, § 428,

---

[4]Contrast the situation in *Yellow Cab Cooperative, Inc.* v. *Workers' Comp. Appeals Bd.* (1991) 226 Cal.App.3d 1288 [277 Cal.Rptr. 434]: Yellow Cab controlled drivers by assigning shifts, instructing on where to drive, how to behave, when to pick up passengers, when not to pick up passengers, when to return to yard.

com. a.) The rule has, however, also been held to apply if an employer is subject to regulations enacted for the protection of the public. "An employer is generally liable for negligent acts of an employee performed within the scope of employment, but if an independent contractor rather than master and servant relationship exists, the independent contractor usually is alone liable for his negligent acts. If, however, an individual or corporation undertakes to carry on an activity involving possible danger to the public under a license or franchise granted by public authority subject to certain obligations or liabilities imposed by the public authority, these liabilities may not be evaded by delegating performance to an independent contractor. The original contractor remains subject to liability for harm caused by the negligence of the independent contractor employed to do the work." (*Taylor* v. *Oakland Scavenger Co.* (1941) 17 Cal.2d 594, 604 [110 P.2d 1044].)

In *Eli* v. *Murphy* (1952) 39 Cal.2d 598 [248 P.2d 756], for example, the activity at issue was the operation of a tractor and semitrailer; an activity which (1) is attended with very considerable risk (*id.* at p. 599), and (2) is highly regulated in order to protect the public safety. (*Id.* at pp. 599-600.) The court in that case found that the effectiveness of those regulations would be impaired if the carrier could circumvent them by having the regulated operations conducted by an independent contractor. It followed that "Highway common carriers may not, therefore, insulate themselves from liability for negligence occurring in the conduct of their business by engaging independent contractors to transport freight for them." (*Id.* at p. 601.)

Millsap introduced evidence that FEC carried a certificate from the Interstate Commerce Commission and, accordingly, was required by that agency to carry liability insurance. (See 49 U.S.C. § 10927(a)(1).) From this she argues that FEC must be held responsible for any negligence attributable to NCE. FEC, however, is not a party to this appeal.

The pivotal issue is whether *NCE*'s operations were "subject to certain obligations or liabilities imposed by the public authority" such that NCE must be held responsible for the negligence of an independent contractor to whom it delegated those duties. The relevant statutes, and the record, indicate that it should not be held so responsible. Thus, 49 United States Code section 10526, provides: "(a) The Interstate Commerce Commission does not have jurisdiction under this subchapter over—. . . [¶] (8)(B) transportation of property (including baggage) by motor vehicle as part of a continuous movement which, prior or subsequent to such part of the continuous movement, has been or will be transported by an air carrier . . . ." Further, the record contains a letter from the Public Utilities Commission to NCE replying to NCE's letter describing its operations and asking if it was

required to carry insurance pursuant to Public Utilities Commission licensing requirements: "Based on the description in that letter your company falls within the air freight motor carrier exemption and, therefore, is not required to have authority either from the Public Utilities Commission or the Interstate Commerce Commission." That NCE was not regulated makes inapplicable the rule stated in section 428 of the Restatement Second of Torts and in *Eli* v. *Murphy* and related cases.

## CONCLUSION

Finding that on the facts before the trial court Pence was acting as an independent contractor, and that NCE was not precluded from delegating to Pence the responsibility of delivering packages without incurring any liability resulting therefrom, we affirm the judgment.

Racanelli, P. J., and Newsom, J., concurred.