**Richard CARROLL III, Plaintiff–Appellant,**

v.

**FEDERAL EXPRESS CORPORATION, a Delaware corporation, Defendant–Appellee.**

No. 95–16603.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 7, 1996.

Decided May 6, 1997.

**164**

Daniel Ray Bacon, San Francisco, CA, for plaintiff-appellant.

J. Russell Stedman and Thomas R. Beer, Barger & Wolen, San Francisco, CA, for defendant-appellee.

Before RONEY,* BEEZER, and TROTT, Circuit Judges.

PER CURIAM:

Federal Express Corporation ("Federal Express") fired Richard Carroll III ("Carroll") from his job as a courier after he tested positive for using cocaine following a random drug test required by Department of Transportation ("DOT") regulations, 49 C.F.R. §§ 391.109, 391.111 ("DOT regulations"). Carroll sued Federal Express alleging constitutional and state law claims arising out of his termination. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

Carroll denies ever having used cocaine. He contends his testing positive on a drug test administered by an independent contractor, Options and Choices ("OAC"), resulted from OAC's failure to comply with the chain of custody requirements established by DOT regulations. *See* 49 C.F.R. §§ 40.23–40.39. Although he signed a certification form attesting that his urine samples had been sealed in his presence with a tamper-proof seal, Carroll now asserts that he signed the form before giving his sample. He denies that the sample was sealed in his presence. He further contends that his sample was left in an office accessible to other Federal Express employees. Carroll maintains that these alleged errors in handling his sample resulted either in his sample being confused with that of another employee who tested

---

* The Honorable Paul H. Roney, Senior Circuit Judge for the Eleventh Circuit, sitting by designation.

positive or his sample being altered after he left the testing area.

Carroll asserts that Federal Express is vicariously liable for violations of his procedural due process rights resulting from OAC's failure to follow the DOT regulations. He also argues that Federal Express is directly liable for breach of contract and breach of the covenant of good faith and fair dealing, because Federal Express terminated him on the basis of a flawed drug test.

The district court granted summary judgment in favor of Federal Express, concluding that, as a matter of law, Federal Express could not be held liable for the actions of its independent contractor, OAC. We review a grant of summary judgment de novo. *Bagdadi v. Nazar,* 84 F.3d 1194, 1197 (9th Cir. 1996).

## I

■ Under California law, an employer generally is not liable for the tortious acts of an independent contractor.[1] *See e.g., Privette v. Superior Court,* 5 Cal.4th 689, 695, 21 Cal.Rptr.2d 72, 854 P.2d 721 (Cal.1993). One exception to this rule is when the employer possesses a non-delegable duty:

> Where the law imposes a definite, affirmative duty upon one by reason of his relationship with others, whether as an owner or proprietor of land or chattels or in some other capacity, such persons can not escape liability for a failure to perform the duty thus imposed by entrusting it to an independent contractor.

*Van Arsdale v. Hollinger,* 68 Cal.2d 245, 251, 66 Cal.Rptr. 20, 437 P.2d 508 (1968). California courts have considered a number of factors in determining whether or not an employer has a non-delegable duty. *Id.* at 253, 66 Cal.Rptr. 20, 437 P.2d 508.

> Some of the principal ones are [ (1) ] that the enterprise, notwithstanding the employment of the independent contractor, remains the employer's because he is the party primarily to be benefited by it, [ (2) ] that [the employer] selects the contractor, is free to insist upon one who is financially responsible, and to demand indemnity from him, [ (3) ] that the insurance necessary to distribute the risk is properly a cost of the employer's business, and [ (4) ] that the performance of the duty of care is of great importance to the public.

*Id.*

■ Carroll contends that the fourth factor is present in this case and provides a basis for finding Federal Express vicariously liable for the actions of OAC. Carroll argues that the DOT regulations establishing the Department's drug testing procedures are the wellspring of a non-delegable duty. Specifically, he points to several DOT statements in the Federal Register that explain the drug testing regulations it promulgated. The DOT stated that "the intent of the Guidelines is to safeguard the accuracy of test results and the privacy of individuals who are tested." *Procedures for Transportation Workplace Drug Testing Programs,* 53 Fed.Reg. 47,002, 47,002 (1988). Further, the DOT in-

---

1. The legal basis of Carroll's procedural due process claim is ambiguous. In his complaint, Carroll alleges that Federal Express, by terminating his employment, "caused [him] to be denied his rights, privileges and immunities guaranteed by the Fifth Amendment to the United States Constitution, namely his right to procedural due process in the taking of his urine sample and his substantive due process right to his job." This allegation can be interpreted either as a claim under 42 U.S.C. § 1983 for violation of Carroll's civil rights, or as a claim under California law for termination in violation of public policy. *See, e.g., TRW, Inc. v. Superior Court of Los Angeles County,* 25 Cal.App.4th 1834, 31 Cal.Rptr.2d 460 (1994) (evaluating claim that employee's termination violated public policy stated in Fifth Amendment). Nevertheless, even if Carroll's claim is based on section 1983, we look to principles of California law to determine whether Federal Express is vicariously liable for the actions of its independent contractor. Section 1988 of Title 42 provides that in all civil rights cases:

> where [the laws of the United States] are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause.

Thus, the source of Carroll's cause of action is not determinative of our choice of law.

dicated that its testing procedures were designed to "protect individual privacy, ensure accountability and integrity of specimens, [and] require confirmation of all positive screening tests." *Controlled Substances Testing*, 53 Fed.Reg. 47134, 47135 (1988).

In addition, Carroll cites *Maloney v. Rath*, 69 Cal.2d 442, 446–47, 71 Cal.Rptr. 897, 445 P.2d 513 (1968), for the proposition that California law supports our imposing a non-delegable duty on Federal Express. In *Maloney*, the California Supreme Court held that the duty to maintain automobile brakes so that they complied with the California Vehicle Code was non-delegable. *Id.* at 446, 71 Cal.Rptr. 897, 445 P.2d 513. The court reasoned that

> [o]ne who by statute or by administrative regulation is under a duty to provide specific safeguards or precautions for the safety of others is subject to liability to the others for whose protection the duty is imposed for harm caused by the failure of a contractor employed by him to provide such safeguards or precautions.

*Id.* at 448, 71 Cal.Rptr. 897, 445 P.2d 513.

Although the DOT expressed concern for the privacy of test results, it does not necessarily follow that the regulations impose a non-delegable duty. Whether they do can only be determined by examining the administrative structure under which Federal Express and other motor carriers operate. *See* C.F.R. §§ 391.81—391.125. We conclude that, if the regulations impose any duty of

great importance to the public on Federal Express, that duty exists for the benefit of the general public, not for the benefit of tested individuals.

Notwithstanding the explanatory statements in the Federal Register, the sole stated purpose of the regulations establishing drug testing procedures for motor carriers is "to reduce highway accidents that result from driver use of controlled substances, thereby reducing fatalities, injuries, and property damage." 49 C.F.R. § 391.81. The regulations requiring motor carriers to maintain a drug-free workforce may produce the collateral benefit of increasing safeguards for the privacy of tested individuals, but their raison d'etre is the protection of the general public. *See id.*

Further, the administrative framework established by the regulations expressly contemplates employer delegation of responsibility for many aspects of testing.[2] That framework does not support the argument that it exists for the purpose of protecting the rights of tested individuals. *See Maloney*, 69 Cal.2d at 448, 71 Cal.Rptr. 897, 445 P.2d 513. Federal Express discharges its responsibilities under the regulations by maintaining the records required of it and employing a licensed outsider to conduct its drug testing. Carroll may have a cause of action, but it does not lie against Federal Express.

Carroll points to regulations that require employers to ensure that testing comports with DOT general guidelines for drug testing found in 49 C.F.R. § 40 in support of his argument for vicarious liability for Federal Express. *See* 49 C.F.R. §§ 391.99, 391.111 and 391.113. Because the motor carrier regulations contemplate delegation for many aspects of testing, as noted *supra*, we conclude that the most sensible reading of the regulations in question is that an employer may discharge its responsibility for ensuring their drug testing program comports with 49 C.F.R. § 40 in two ways. First, an employer can choose to administer its own testing program within the guidelines of 49 C.F.R. § 40. Second, an employer may discharge its responsibility under the regulations in question by hiring licensed outsiders to perform testing. *See* 49 C.F.R. §§ 391.86–391.89.

---

2. The employer bears responsibility, inter alia, for: employing or using a Medical Review Officer ("MRO") to conduct testing, 49 C.F.R. § 391.86; maintaining records, for purposes of inspection by the Federal Highway Administrator, 49 C.F.R. § 391.87; testing drivers when the employer has reasonable cause to suspect drug use, 49 C.F.R. § 391.99; testing driver-applicants before hiring or using them, 49 C.F.R. § 391.103; and, testing all drivers randomly biennially, 49 C.F.R. § 391.105.

49 C.F.R. § 391.86 defines a MRO as "a licensed doctor of medicine or osteopathy with knowledge of drug abuse disorders that is employed or used by a motor carrier to conduct drug testing." The MRO bears responsibility, inter alia, for: conducting testing, 49 C.F.R. § 391.86; notifying tested individuals of the results, 49 C.F.R. § 391.87; maintaining test result records, *Id.*, maintaining the confidentiality of those records, 49 C.F.R. § 391.89.

## II

Carroll contends that even if it cannot be held vicariously liable for the alleged errors of OAC, Federal Express should be held directly liable because it wrongfully terminated him. Carroll argues that Federal Express's testing policy created an implied obligation not to fire him except for cause, i.e. for a positive drug test that was untainted by error. We reject Carroll's claim that Federal Express's testing policy created such an implied contract.

The DOT regulations for motor carriers require that drivers who test positive not "be on duty." 49 C.F.R. § 391.95. Federal Express's policy implementing those regulations provided for the termination of drivers who tested positive. Possessed of the knowledge of Carroll's positive test result, Federal Express acted in good faith within the terms of its policy when it terminated Carroll. As such, Carroll cannot rightfully assert that Federal Express breached an implied obligation when it terminated him because of the alleged errors of OAC.

**AFFIRMED.**