**Albert ROBINSON, aka Robby Gibson, Plaintiff,**

v.

**CITY OF SAN BERNARDINO POLICE DEPARTMENT, San Bernardino Chief of Police, Sgt. Grzonka, Officer T. Crocker, Officer Ernesto Antillion, Unknown Jailer, Western Nurse Specialist Inc., Western Nurse L. Vielma, Defendants.**

No. CV 96–2539–DT (RC).

United States District Court, C.D. California.

Jan. 26, 1998.

ORDER ADOPTING REPORT AND
RECOMMENDATION OF UNITED
STATES MAGISTRATE JUDGE

TEVRIZIAN, District Judge.

Pursuant to 28 U.S.C. Section 636, the Court has reviewed the Complaint and other

papers along with the attached Report and Recommendation of United States Magistrate Judge Rosalyn M. Chapman, and has made a *de novo* determination.

IT IS ORDERED that:

(1) the Report and Recommendation is approved and adopted;

(2) summary judgment is granted for defendant Western Nurse Specialists, Inc. and, there being is no just reason for delay, Judgment shall be entered under Fed.R.Civ.P. 54(b);

(3) summary judgment is granted for defendant Lorraine Vielma and, there being no just reason for delay, Judgment shall be entered under Fed.R.Civ.P. 54(b);

(4) plaintiff's request for sanctions against defendant Western Nurse Specialists, Inc. under Fed.R.Civ.P. 11 is denied;

(5) defendant Western Nurse Specialists, Inc.'s request-for sanctions against plaintiff under Fed.R.Civ.P. 11 is granted, and plaintiff shall pay $420.00 to defendant Western Nurse Specialists, Inc. within thirty (30) days of the date of this Order; and

(6) plaintiff's motion to file an amended complaint and to join new defendants is denied.

IT IS FURTHER ORDERED that the Clerk shall serve copies of this Order, the Magistrate Judge's Report and Recommendation and Judgment by the United States mail on the parties.

## REPORT AND RECOMMENDATION OF A UNITED STATES MAGISTRATE JUDGE

CHAPMAN, United States Magistrate Judge.

This Report and Recommendation is submitted to the Honorable Dickran Tevrizian, United States District Judge, pursuant to the provisions of 28 U.S.C. § 636 and General Order 194 of the United States District Court for the Central District of California.

---

**1.** On October 15, 1997, the plaintiff filed a notice of change of address showing he has been re-

## BACKGROUND

### I

On April 10, 1996, plaintiff Albert Robinson, a state prisoner [1] proceeding *pro se* and *in forma pauperis,* filed a civil rights complaint under 42 U.S.C. § 1983 against defendants City of San Bernardino Police Department ("defendant City"), San Bernardino Chief of Police, Sgt. Grzonka, Officer T. Crocker, Officer Ernesto Antillion, unknown jailor, Western Nurse Specialists, Inc. ("WNS") (erroneously sued as "Western Nurse Specialist"), and Western Nurse L. Vielma. The plaintiff alleges that on July 3, 1994, following his arrest for second degree robbery, defendants subjected him to a "sexual examination," which was performed in a manner violative of the Fourth Amendment, the Eighth Amendment, the Thirteenth Amendment, and the due process and equal protection provisions of the Fourteenth Amendment. Complaint, at 4–6; Nature of the Complaint ("NOC"), at 1. The examination was conducted by defendant Vielma, while defendants Grzonka and Antillion grabbed plaintiff's legs and defendants Crocker and unknown jailor held plaintiff's arms. NOC at 2. Defendant Vielma also drew blood from plaintiff and put something in his mouth while defendant Grzonka held him. *Id.* at 2–3. A few days later, plaintiff began to feel "severe pain in his left leg and noticed swelling and what appeared to be bruises." *Id.* at 3. He saw a doctor, who discovered that plaintiff's left leg had been held and squeezed so severely that "blood clotted." *Id.* At a later date, while exercising, the pain, swelling and spots reappeared on plaintiff's left leg and "as of this date the[re] still appears to be a permanent disfiguration of there [sic] skin tissue from the initial pressure applied when plaintiff[']s legs were held." *Id.* at 3–4.

In his "request for relief," plaintiff seeks compensatory damages in the amount of $1 million dollars from each of defendants Chief of Police, Grzonka and Vielma and $500,-000.00 from each of defendants Crocker and Antillion; punitive damages in the amount of

---

leased from prison.

$15 million dollars from each of defendants City and WNS; and a temporary restraining order.

On August 30, 1996, defendants City, Ernesto Antillion, Timothy Crocker, San Bernardino Chief of Police and Sgt. Grzonka (collectively "City defendants") answered the complaint and raised numerous affirmative defenses. In their answer, City defendants admit, *inter alia,* that, on July 3, 1994, they were employed as police officers by defendant City, the plaintiff was arrested for attempted robbery and underwent a physical examination to obtain evidence but resisted defendants during that examination. On November 25, 1996, defendants WNS and Vielma, separately, answered the complaint and raised affirmative defenses. Defendant Vielma admits that on July 3, 1994, she performed a "sex kit" examination on plaintiff, a suspect then in custody at the San Bernardino Police Department, but denies any allegations concerning misconduct while performing the examination.

## II

On July 2, 1997, defendant WNS filed a motion for summary judgment, pursuant to Fed.R.Civ.P. 56, claiming that it cannot be held liable under 42 U.S.C. § 1983 because it did not personally participate in the alleged civil rights violation and it cannot be held vicariously liable for the alleged acts of defendant Vielma who was an independent contractor working as a phlebotomist. The plaintiff was given notice of the requirements to oppose a motion for summary judgment under Fed.R.Civ.P. 56, as required by *Klingele v. Eikenberry,* 849 F.2d 409, 411–12 (9th Cir.1988). On July 30, 1997, the plaintiff filed an opposition to defendant WNS's summary judgment motion and requested judgment for the plaintiff as a matter of law. Defendant WNS filed a reply to the plaintiff's opposition on August 22, 1997.

On September 3, 1997, the plaintiff moved for sanctions under Fed.R.Civ.P. 11 against counsel for defendant WNS contending that defendant WNS's reply to his opposition to its motion for summary judgment was misleading and frivolous. On September 10, 1997, defendant WNS filed an opposition to the plaintiff's motion for sanctions, and filed its own request for sanctions under Fed. R.Civ.P. 11 against the plaintiff.

On November 3, 1997, defendant Vielma filed a motion for summary judgment, pursuant to Fed.R.Civ.P. 56, claiming that she relied in good faith on the actions of the police officers who were directing her in the conduct of the "sex kit" examination of the plaintiff. On December 9, 1997, the plaintiff filed his opposition to defendant Vielma's motion for summary judgment, and also filed a "separate statement of genuine issues."

## III

The summary judgment documents establish the following facts: Defendant Vielma is a certified phlebotomist employed as an independent contractor by defendant WNS, a California corporation that employs phlebotomists and registered nurses to, *inter alia,* draw blood and take urine and swab samples. Declaration of Lorraine Vielma ("Vielma Decl.") ¶ 2; Declaration of Faye Otto–Batiste ("Batiste Decl.") ¶¶ 3, 5, 12a; Plaintiff's Motion in Opposition to Defendant WNS's Motion for Summary Judgment ("Opposition"), Exh. I. On April 18, 1992, defendants Vielma and WNS entered into an independent contractor agreement, which provided that defendant Vielma would render certain services on behalf of defendant WNS, including collecting blood and urine specimens, collecting evidence from rape suspects ("sex kit" exams), removing taser darts, and making court appearances. Batiste Decl. Exh. A at 1. The independent contractor agreement could be terminated by either defendant Vielma or defendant WNS with thirty days prior written notice, and by defendant WNS without notice for unsatisfactory performance or violations of defendant WNS's rules, policies or procedures. Batiste Decl. Exh. A at 1.

Under the agreement between defendants Vielma and WNS, defendant Vielma retained the sole right to control the manner in which her services were performed; however, defendant WNS retained the right to generally supervise defendant Vielma's work to insure conformity with WNS policies and procedures. Batiste Decl. Exh. A at 2. Additionally, defendant Vielma was free to practice her

profession for others when not performing work for defendant WNS. Batiste Decl. Exh. A at 2–3.

Defendant Vielma was paid by defendant WNS by the job performed; she did not have a regular salary. Batiste Decl. ¶ 12e, Exh. A at 2. Defendant Vielma received no employee benefits from defendant WNS, and she was required to withhold her own payroll and self-employment taxes. Batiste Decl. ¶ 12k, Exh. A at 2–3. Defendant Vielma was also required to maintain her own malpractice insurance and to provide transportation to and from the sites at which she performed her work. Batiste Decl. ¶ 12f, 1, Exh. A at 2. Defendant Vielma did not have an office at WNS; instead defendant WNS and/or local law enforcement agencies would contact her via a beeper to request her services. Batiste Decl. ¶ 12b-d.

On July 3, 1994, the plaintiff was arrested for the attempted robbery of an elderly man in the parking lot of a restaurant. Declaration of Timothy Crocker ("Crocker Decl.") ¶ 5. Defendant Crocker received information that the plaintiff was on parole and that a no bail warrant for violation of parole had been issued. Crocker Decl. ¶ 6. Further, the plaintiff fit the physical description of a suspect in a kidnapping/sodomy that had taken place in the same area the day before the attempted robbery. Crocker Decl. ¶ 7; Opposition, Exh. K. It was also ascertained that the method of operation in both the attempted robbery and the kidnapping/sodomy were similar in that the suspect said he had a gun but did not show it. Crocker Decl. ¶ 8; Opposition, Exh. K.

On July 3, 1994, defendant Vielma was dispatched to the San Bernardino Police Department by both defendant WNS and the San Bernardino Police Department to perform a "sex kit" examination on a rape suspect. Batiste Decl. ¶ 6; Crocker Decl. ¶ 9; Vielma Decl. ¶ 5. Defendant Vielma then conducted the "sex kit" examination on the plaintiff, with the use of materials provided by the California Department of Justice.[2] Crocker Decl. ¶¶ 12–13; Vielma Decl. ¶¶ 6–7.

No other employee from defendant WNS was present when defendant Vielma performed the "sex kit" examination; however, defendant Crocker was present during the entire procedure and directed defendant Vielma. Batiste Decl. ¶ 8; Crocker Decl. ¶¶ 12, 15; Vielma Decl. ¶ 7. At all times, defendant Vielma reasonably and in good faith believed that the police had probable cause or a search warrant to perform the "sex kit" examination on the plaintiff. Vielma Decl. ¶¶ 9–10.

## DISCUSSION

### IV

Federal Rule of Civil Procedure 56(c) authorizes the granting of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The standard for granting a motion for summary judgment is essentially the same as for granting a directed verdict. Judgment must be entered "if, under the governing law, there can be but one reasonable conclusion as to the verdict.... If reasonable minds could differ ..." judgment should not be entered in favor of the moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250–51, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact," which burden may be satisfied by showing the absence of evidence to support an essential element of the nonmoving party's claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Zoslaw v. MCA Distrib. Corp.,* 693 F.2d 870, 883 (9th Cir.1982), *cert. denied,* 460 U.S. 1085, 103 S.Ct. 1777, 76 L.Ed.2d 349 (1983). An issue of material fact is one that affects the outcome of the litigation and requires a trial to resolve.

---

**2.** Since 1991, defendant Vielma has performed over 80 "sex kit" examinations. Vielma Decl.

¶ 10.

*S.E.C. v. Seaboard Corp.,* 677 F.2d 1301, 1305–06 (9th Cir.1982). More than a "metaphysical doubt" is required to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The burden then shifts to the non-moving party to establish, beyond the pleadings, that there is a genuine issue for trial. *Celotex,* 477 U.S. at 324. The parties bear the same substantive burden of proof as would apply at a trial on the merits, including plaintiff's burden to establish any element essential to his case. *Liberty Lobby,* 477 U.S. at 252; *Celotex,* 477 U.S. at 322; *Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir.1989).

**V**

The plaintiff's complaint against defendant WNS alleges that it violated his Fourth, Eighth, Thirteenth and Fourteenth Amendment rights by "caus[ing] and allow[ing him] to be sexually ass[a]ulted and brutalized ... through policies, customs, procedures and unlawful practices." Complaint at 3. Although the plaintiff cites the Fourth, Eighth, Thirteenth and Fourteenth Amendments, his claim properly arises solely under the Fourth Amendment. *See Pierce v. Multnomah County, Oregon,* 76 F.3d 1032, 1043 (9th Cir.) (holding that "the Fourth Amendment sets the applicable constitutional limitations on the treatment of an arrestee detained without a warrant up until the time such arrestee is released or found to be legally in custody based upon probable cause for arrest."), *cert. denied,* —— U.S. ——, 117 S.Ct. 506, 136 L.Ed.2d 397 (1996).

A Section 1983 claim premised upon liability stemming from a policy, custom or practice cannot be established through the doctrine of respondeat superior or vicarious liability. *Monell v. Department of Social Serv.,* 436 U.S. 658, 691, 694, 98 S.Ct. 2018, 2036–38, 56 L.Ed.2d 611 (1978). Although Monell involved a municipal corporation, it has been extended to private corporations, as well. *Street v. Corrections Corp. Of America,* 102 F.3d 810, 817–18 (6th Cir.1996); *Harvey v. Harvey,* 949 F.2d 1127, 1129–30 (11th Cir.1992); *Rojas v. Alexander's Dep't Store, Inc.,* 924 F.2d 406, 408 (2d Cir.1990), *cert. denied,* 502 U.S. 809, 112 S.Ct. 52, 116 L.Ed.2d 30 (1991); *Lux v. Hansen,* 886 F.2d 1064, 1067 (8th Cir.1989); *Iskander v. Village of Forest Park,* 690 F.2d 126, 128 (7th Cir. 1982); *Powell v. Shopco Laurel Co.,* 678 F.2d 504, 506 (4th Cir.1982); *See also Lyons v. National Car Rental Sys., Inc.,* 30 F.3d 240, 245 (1st Cir.1994) (stating that "[a]lthough the holding in Monell is framed so that it expressly applies only to local governments, the decision is based generally on the language and legislative history of § 1983, not on principles—such as sovereign or qualified immunity —— applicable only to governmental entities."). Thus, to succeed in his claim against defendant WNS, the plaintiff must show that defendant WNS adhered to a policy, custom or practice that caused him to be deprived of his constitutional rights. *Perkins v. City of West Covina,* 113 F.3d 1004, 1010 (9th Cir.1997); *Pierce,* 76 F.3d at 1039 (9th Cir.).

Here, the plaintiff has neither identified nor shown any specific policy, custom or practice of defendant WNS's that injured him or was unconstitutional.[3] *See Davis v.*

---

**3.** In response to a special interrogatory, defendant WNS described its "polic[ies] and procedure[s]" for "gathering evidence o[f] sexual crimes for the police department" as follows:

[E]xamination may include obtaining evidence such as dried secretions, foreign materials, [and] evidence of blood/alcohol from the suspect. Appropriate security precautions may be taken to protect against actions by the suspect. Information is obtained concerning the assault. Information is recorded regarding the examination and regarding the assault. Information concerning a suspect may be obtained. Patient history is obtained. General physical examination is conducted and the findings are

recorded. Evidence is collected and preserved. The physical examination may include recording such information as blood pressure, height, weight, [and] information regarding clothing, [and] obtaining physical evidence from the suspect. External genitalia, including examination performed and collection of foreign materials from external genitalia may occur. Penile swabs may be performed. Other evidence and samples may be obtained, including blood specimens, urine specimens, saliva specimens, [and] hair samples. Drug screening, alcohol screening, and screening for venereal disease and DNA may be performed. Examinations are to be conducted in accor-

*City of Ellensburg,* 869 F.2d 1230, 1234 (9th Cir.1989)(affirming summary judgment for city where no evidence produced to establish existence of policy or custom of inadequate medical treatment of prisoners). In fact, the plaintiff has never identified or shown a long-standing policy, custom, or practice that constitutes defendant WNS's standard "sex kit" examination procedure. *See Trevino v. Gates,* 99 F.3d 911, 918 (9th Cir.1996) (noting that, absent a formal policy, plaintiff must show longstanding practice or custom constituting standard operating procedure), *cert. denied,* —— U.S. ——, 117 S.Ct. 1249, 137 L.Ed.2d 330 (1997).

■ Further, Monell liability under Section 1983 cannot be shown by a single, isolated unlawful act by a non-policymaking employee.[4] *See Trevino,* 99 F.3d at 918 ("Liability for improper custom must not be predicated on isolated or sporadic incidents"); *Davis,* 869 F.2d at 1233–34 (9th Cir.1989) ("a plaintiff cannot prove the existence of a municipal policy or custom based solely on the occurrence of a single incident of unconstitutional action by a non-policymaking employee"); *Collins v. City of San Diego,* 841 F.2d 337, 341–42 (9th Cir.1988) (city not liable for the actions of police sergeant who was non-policymaking official).

■ Finally, the plaintiff contends that defendant WNS should be held liable for failing to properly train defendant Vielma. *See City of Canton, Ohio v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) (inadequacy of police training may be basis for Section 1983 liability where failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact). The plaintiff, however, has failed to establish that defendant WNS inadequately trained its employees. *Davis,* 869 F.2d at 1234. Instead, the plaintiff has tried to

prove that defendant Vielma was inadequately trained.[5] By limiting his proof to the adequacy of training of a single employee, plaintiff has failed to create a genuine issue of fact as to the inadequate training of its employees by defendant WNS. *See City of Canton, Ohio,* 489 U.S. at 390–91, 109 S.Ct. at 1197, 1206 ("[t]hat a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program."); *Alexander v. City and County of San Francisco,* 29 F.3d 1355, 1368 (9th Cir. 1994) (plaintiff failed to create a genuine issue of material fact as to the deliberate indifference of a municipality when she limited her proof to the adequacy of training of a single officer), *cert. denied,* 513 U.S. 1083, 115 S.Ct. 735, 130 L.Ed.2d 638 (1995). Therefore, defendant WNS's motion for summary judgment should be granted.

## VI

■ This Court looks to principles of California law to determine whether defendant Vielma is an independent contractor or an employee and whether defendant WNS may be vicariously liable for her actions. *See Carroll v. Federal Express Corp.,* 113 F.3d 163, 165 n. 1 (9th Cir.1997) (per curiam) ("[Under] section 1983, we look to principles of California law to determine whether [the defendant] is vicariously liable for the actions of its independent contractor."), *cert. denied* —— U.S. ——, 118 S.Ct. 852, 139 L.Ed.2d 753(1997); *Horn v. Kean,* 796 F.2d 668, 670–71 (3d Cir.1986) (per curiam) (applying New Jersey law to determine plaintiffs' employment status in a civil rights action), *overruled on other grounds, Board of County Comm'rs, Wabaunsee County, Kan. v. Umbehr,* 518 U.S. 668, 116 S.Ct. 2342, 135

---

dance with California Medical Protocol for examination of sexual assault suspects and in accordance with San Bernardino County procedures for examination of sex assault suspects.
Opposition, Exh. C at 2:21–3:21.

4. Defendant WNS also argues that it is entitled to summary judgment because it cannot be held liable for the allegedly unconstitutional actions of defendant Vielma, an independent contractor;

however, solely for purposes of this discussion, the Court will assume that defendant Vielma was an employee of defendant WNS, not an independent contractor.

5. *See* Opposition at 8:19–21 (alleging that defendant "Vielma was not trained or educated in the civil, statutory or constitutional rights of anyone she was hired to perform ["sex kit" examinations] on.")

L.Ed.2d 843 (1996) and *O'Hare Truck Service, Inc. v. City of Northlake,* 518 U.S. 712, 116 S.Ct. 2353, 135 L.Ed.2d 874 (1996). When the facts regarding whether a person is an employee or an independent contractor permit only one inference to be drawn, the determination is a question of law. *Mantonya v. Bratlie,* 33 Cal.2d 120, 199 P.2d 677 (1948); *Millsap v. Federal Express Corp.,* 227 Cal.App.3d 425, 431, 277 Cal.Rptr. 807 (1991).

■ Under California law, an employer generally is not liable for the acts of an independent contractor. *Carroll,* 113 F.3d at 165; *Yanez v. United States,* 63 F.3d 870, 872 (9th Cir.1995). "An independent contractor is one who renders service in the course of an independent employment or occupation, following his employer's desire only as to the results of the work, and not as to the means whereby it is accomplished." *McDonald v. Shell Oil Co.,* 44 Cal.2d 785, 788, 285 P.2d 902 (1955); *Millsap,* 227 Cal.App.3d at 431, 277 Cal.Rptr. 807; *White v. Uniroyal, Inc.,* 155 Cal.App.3d 1, 24, 202 Cal.Rptr. 141 (1984), *overruled on other grounds, Soule v. General Motors Corp.,* 8 Cal.4th 548, 34 Cal.Rptr.2d 607, 882 P.2d 298 (1994). In determining whether an independent contractor relationship exists, "[t]he California Supreme Court has emphasized that the most significant factor is the right to control the means by which the work is accomplished." *In re Brown,* 743 F.2d 664, 667 (9th Cir.1984). Other factors to be considered include whether the worker is engaged in a distinct occupation or business; the kind of occupation, with reference to whether the work is usually supervised by the principal or is done without supervision; the skill required in the occupation; whether the principal or the worker supplies the instrumentalities, tools, and the place of work; the length of time for which the services are to be performed; the method of payment, whether by the time or by the job; whether the work is a part of the regular business of the principal; and whether the parties believe they are creating the relationship of employer-employee. *S.G. Borello & Sons, Inc. v. Department of Indus. Relations,* 48 Cal.3d 341, 351, 256 Cal.Rptr. 543, 548, 769 P.2d 399 (1989); *Tieberg v. Unemployment Ins. Appeals Board,* 2 Cal.3d 943, 949, 88 Cal.Rptr. 175, 179, 471 P.2d 975 (1970); *Empire Star Mines Co. v. California Employment Comm'n,* 28 Cal.2d 33, 43–44, 168 P.2d 686 (1946), *overruled on other grounds, People v. Sims,* 32 Cal.3d 468, 186 Cal.Rptr. 77, 651 P.2d 321 (1982).

■ Pursuant to the contract between defendants Vielma and WNS, defendant Vielma retained the sole right to control or direct the manner in which the sex kit examination was performed, although defendant WNS retained the right to insure conformity with its policies. If, as here, control may not be exercised over the means by which the work is accomplished, but only as to the result of the work, an independent contractor relationship is established. *Tieberg,* 2 Cal.3d at 946–47, 88 Cal.Rptr. at 177, 471 P.2d 975; *See also McDonald,* 44 Cal.2d at 788, 285 P.2d 902 (stating that "[t]he general supervisory right to control the work so as to insure its satisfactory completion in accordance with the terms of the contract does not make the hirer of the independent contractor liable for the latter's negligent acts in performing the details of the work.").

Moreover, where the parties enter into a written agreement which sets forth the details of their relationship and which expressly states the legal nature of the relationship they intend to create, the agreement is a significant factor to consider. *Tieberg,* 2 Cal.3d at 952, 88 Cal.Rptr. at 181, 471 P.2d 975; *Mission Ins. Co. v. Workers' Compensation Appeals Board,* 123 Cal.App.3d 211, 226, 176 Cal.Rptr. 439 (1981); *Automatic Canteen Co. of America v. State Board of Equalization,* 238 Cal.App.2d 372, 389, 47 Cal.Rptr. 848 (1965). Here, defendants WNS and Vielma clearly specified in their written agreement that they were entering into an independent contractor relationship, not an employer/employee relationship. Specifically, the agreement, which is entitled "Independent Contractor Agreement," states that "Contractor and Client intend this agreement to be one of independent contractor and employer" and "[t]he parties to this contract agree that the Contractor is a professional person and the relation created by this contract is that of employer-independent

contractor." Batiste Decl., Exh. A at 1–2. Moreover, defendant Vielma signed the contract directly below the following statement "I will be serving as an independent contractor...." Batiste Decl., Exh. A at 3.

■ Finally, other factors also support the determination that defendants WNS and Vielma entered into an independent contractor relationship. Specifically, defendant Vielma was employed as a certified phlebotomist, a skilled position. Defendant Vielma was paid on a "job" basis and did not receive a salary from defendant WNS. Defendant Vielma received no employee benefits from defendant WNS, and was required to withhold her own payroll and self-employment taxes. She also was required to maintain her own malpractice insurance and to provide transportation to and from the local law enforcement agencies. Defendant Vielma did not have an office at WNS; instead defendant WNS and/or local law enforcement agencies would contact her via a beeper to request her services. Finally, defendant Vielma was free to practice her profession for others when not working for defendant WNS.[6] *See Millsap,* 227 Cal.App.3d at 431–33, 277 Cal.Rptr. 807 (independent contractor relationship established when employer and delivery driver had the understanding that driver was an independent contractor, employer did not instruct driver how to make deliveries or drive his car, and driver was paid on a "per route" basis, received no employee benefits, had no taxes withheld from his check, used his own car to make deliveries, and furnished his own gas, oil and liability insurance). Therefore, defendant WNS is, alternatively, entitled to summary judgment because it cannot be held liable for the actions of defendant Vielma, who was an independent contractor. *Carroll,* 113 F.3d at 165–66.

## VII

Defendant Vielma asserts that she is entitled to summary judgment because she acted in "good faith" reliance that the police officers who directed her to administer the "sex kit" examination on the plaintiff were acting in accordance with the Constitution.

■ Good faith is a defense available to private persons in a Section 1983 action who act under color of state law. *Vector Research, Inc., v. Howard & Howard Attorneys P.C.,* 76 F.3d 692, 699 (6th Cir.1996); *Jordan v. Fox, Rothschild, O'Brien & Frankel,* 20 F.3d 1250, 1276, (3d Cir.1994); *Wyatt v. Cole,* 994 F.2d 1113, 1118 (5th Cir.), *cert. denied,* 510 U.S. 977, 114 S.Ct. 470, 126 L.Ed.2d 421 (1993); *See also Richardson v. McKnight,* — U.S. —, —, 117 S.Ct. 2100, 2108, 138 L.Ed.2d 540 (1997) (noting that the Supreme Court has "not foreclose[d] the possibility that private defendants faced with § 1983 liability ... could be entitled to an affirmative defense based on good faith...." (quoting *Wyatt v. Cole,* 504 U.S. 158, 169, 112 S.Ct. 1827, 1834, 118 L.Ed.2d 504 (1992))). A good faith defense, unlike qualified immunity, depends on the subjective state of mind of the private person. *Jordan,* 20 F.3d at 1277.

■ Here, defendant Vielma has established that she conducted the "sex kit" examination on plaintiff at defendant Crocker's direction and, at all times, she believed that the police had probable cause or a search warrant to perform the "sex kit" examination. Since the plaintiff has not submitted any evidence from which it may be inferred that she acted in bad faith, defendant Vielma is entitled to summary judgment in her favor. *See Duncan v. Peck,* 844 F.2d 1261, 1268 (6th Cir.1988) (summary judgment appropriate in Section 1983 action where no material question of fact as to defendant's good faith reliance on attorney's advice); *Nemo v. City of Portland,* 910 F.Supp. 491,

---

**6.** Additionally, either party could terminate the contract by providing thirty days prior written notice, and defendant WNS could terminate the contract without notice for unsatisfactory performance or violation of defendant WNS's rules, policies or procedures. While the right to discharge at will, or without cause, is strong evidence in support of an employment relationship, *S.G. Borello & Sons, Inc.,* 48 Cal.3d at 350–51,

256 Cal.Rptr. at 548, 769 P.2d 399; *Empire Star Mines Co.,* 28 Cal.2d at 43, 168 P.2d 686, evidence that either party, with notice, can terminate the contract is consistent with either an employment-at-will or continuing contractual relationship and does not necessarily "shift the balance in favor of employee status." *State Compensation Ins. Fund v. Brown,* 32 Cal.App.4th 188, 203, 38 Cal.Rptr.2d 98 (1995).

499 (D.Or.1995) (summary judgment appropriate in Section 1983 action when park employee relied in good faith on his employer's policy, which was not patently unconstitutional, and plaintiffs presented no evidence from which it could be inferred employee was acting in bad faith).

## VIII

██ . Under Rule 11 of the Federal Rules of Civil Procedure, sanctions may be awarded, "after notice and a reasonable opportunity to respond," against a party who files a complaint, motion or other legal document with an improper purpose, such as to harass or to cause unnecessary delay or to needlessly increase the cost of litigation, and whose claims are not warranted by existing law or a non-frivolous argument. Here, both plaintiff and defendant WNS seek sanctions against each other under Rule 11. As this Court has determined that defendant WNS is entitled to summary judgment, the plaintiff's request for sanctions against defendant WNS for filing a reply to plaintiff's opposition to defendant WNS's motion for summary judgment is denied; defendant WNS's reply was meritorious, not frivolous.

Defendant WNS's request for sanctions against plaintiff for filing his Rule 11 motion is granted. There was no reason for plaintiff to seek sanctions against defendant WNS except to harass and to needlessly increase the cost of litigation. Defendant WNS seeks sanctions in the amount of $420.00 for its reasonable expenses in responding to plaintiff's frivolous request for sanctions. The reasonableness of this amount has been established by the declaration of Lani R. Miller, defendant WNS's counsel.

---

**7.** Although the plaintiff has denominated his motion as a motion for joinder, it is, in fact, a motion to amend the complaint, and it will be discussed as such.

**8.** The proposed "supplemental pleading" is not, in fact, a supplemental pleading and cannot be permitted as such under Fed.R.Civ.P. 15(d) because it does not "set[] forth transactions or occurrences or events which have happened since the date of the pleading sought to be sup-

## IX

On August 22, 1997, the plaintiff filed a motion and supporting declaration for joinder [7] of the following additional parties as defendants: W.R. Holcomb (Mayor of defendant City), James F. Penman (City Attorney), Faye Battiste–Otto, R.N. (president of defendant WNS), and defendant City's council members Estrada, Reilly, Flores, Maudsley, Minor, Pope–Ludlam and Miller, and lodged a supplemental complaint naming those defendants. The plaintiff asserts that the parties he seeks to join "individually and collectively adopted and promulgated policies, orders and regulations that were implemented and carried out by their subordinates as custom, practice, policy and procedure in contravention of plaintiff's constitutional rights." Joinder Motion at 3. On August 27, 1997, City defendants filed an opposition to the motion for joinder. On September 16, 1997, defendant WNS filed its opposition to the motion for joinder. On September 15 and September 29, 1997, plaintiff filed replies to the oppositions.

██ Here, the proposed amended complaint would expand this action to add new defendants and a totally new claim, specifically that defendants City and WNS entered into an unconstitutional contract on November 5, 1990. Proposed Supplemental Pleading at 1–8.[8] Moreover, this claim is barred by the California statute of limitations, California Code of Civil Procedure (C.C.P.) § 340(3), which establishes a one-year statute of limitations for Section 1983 actions. *Torres v. City of Santa Ana*, 108 F.3d 224, 226 (9th Cir.1997); *Elliott v. City of Union City*, 25 F.3d 800, 802 (9th Cir.1994).

Any tolling of the statute of limitations is governed by C.C.P. § 352.1,[9] which provides for tolling up to two years when a person is imprisoned at the time the cause of action

---

plemented." Fed.R.Civ.P. 15(d) (emphasis added).

**9.** C.C.P. § 352.1 provides that "[i]f a person entitled to bring an action ... is, at the time the cause of action accrued, imprisoned on a criminal charge ... the time of that disability is not a part of the time limited for the commencement of the action, **not to exceed two years.**" (emphasis added).

accrues. *Hardin v. Straub,* 490 U.S. 536, 543–44, 109 S.Ct. 1998, 2002–03, 104 L.Ed.2d 582 (1989); *Torres,* 108 F.3d at 226; *Parker v. Marcotte,* 975 F.Supp. 1266, 1269–70 (C.D.Cal.1997). Here, the events giving rise to plaintiff's Section 1983 action accrued on July 3, 1994, when he underwent the "sex kit" examination. NOC at 1–2. A claim accrues when an individual has knowledge of both the injury and its cause. *Alvarez–Machain v. United States,* 107 F.3d 696, 699 (9th Cir.), *cert. denied,* — U.S. —, 118 S.Ct. 60, 139 L.Ed.2d 23 (1997); *Dyniewicz v. United States,* 742 F.2d 484, 486–87 (9th Cir.1984). Under C.C.P § 352.1, the statute of limitations would have been tolled for two years and would have expired on July 3, 1997, or three years from the accrual of the plaintiff's claim.

Since the plaintiff did not seek to amend his complaint to add a new claim and to join the new parties until August 22, 1997, after the tolled statute of limitations had run, his amended complaint is barred by the statute of limitations. *See Klarfeld v. United States,* 944 F.2d 583, 586 (9th Cir.1991) ("a district court does not err in denying leave to amend where the amendment would be futile."); *Sackett v. Beaman,* 399 F.2d 884, 892 (9th Cir.1968) (district court properly denied proposed second amended complaint that was barred by statute of limitations). Similarly, it would be futile to join Batiste, since defendant WNS's motion for summary judgment has been granted. Thus, the plaintiff's motion for joinder should be denied.

### RECOMMENDATION

IT IS RECOMMENDED that the Court issue an Order that:

(1) approves and adopts the Report and Recommendation;

(2) grants summary judgment for defendant Western Nurse Specialists, Inc. and, there being is no just reason for delay, enters Judgment under Fed.R.Civ.P. 54(b);

(3) grants summary judgment for defendant Lorraine Vielma and, there being no just reason for delay, enters Judgment under Fed.R.Civ.P. 54(b);

(4) denies plaintiff's request for sanctions against defendant Western Nurse Specialists, Inc. under Fed.R.Civ.P. 11;

(5) grants defendant Western Nurse Specialists, Inc.'s request for sanctions in the amount of $420.00, against plaintiff under Fed.R.Civ.P. 11; and

(6) denies plaintiff's motion to file an amended complaint and to join new defendants.