Joseph AMBROSE, D.C., Plaintiff,

v.

Gary COFFEY, et al., Defendants.

No. CIV S–08–1664 LKK/GGH.

United States District Court,
E.D. California.

March 31, 2010.

Daniel A. Horowitz, Law Office of Daniel Horowitz, Lafayette, CA, Martin L. Jaspovice, Richard Jay Simons, Jessica Brown Redditt, Furtado, Jaspovice & Simons, Hayward, CA, for Plaintiff.

Dana A. Suntag, The Suntag Law Firm, A Professional Corporation, Stockton, CA, Dennis B. Kass, Evelina Maria Serafini, Manning & Marder, Kass, Ellrod, Ramirez, LLP, Los Angeles, CA, Brian J. Finn, Manning & Marder, San Francisco, CA, for Defendants.

### ORDER

LAWRENCE K. KARLTON, Senior District Judge.

Plaintiffs bring suits arising out of an investigation of them, their arrests, and their criminal prosecutions. Numerous motions are at issue here. They include two motions for reconsideration, two motions to dismiss, and one motion for judgment on the pleadings.

### I. BACKGROUND

#### A. Procedural History

On July 18, 2008, plaintiff Joseph Ambrose ("Ambrose") filed a complaint against Gary Coffey ("Coffey"), James C. Weydert ("Weydert"), William Reynolds ("Reynolds"), Travelers Property and Casualty Company of America ("Travelers"), Zenith Insurance Company ("Zenith"), and the County of San Joaquin ("County"). On August 20, 2008, Travelers and Reynolds moved to dismiss all causes of action pled against them, and on August 28, 2008, the County, Coffey, and Weydert also moved to dismiss all claims against them.

Ambrose voluntarily dismissed Zenith on September 4, 2008. On November 13, 2008, the court granted defendants' motions to dismiss Ambrose's complaint in part, and granted Ambrose leave to amend his complaint. Ambrose filed an amended complaint on September 18, 2009.

On May 28, 2009, plaintiffs Richard Sausedo ("Sausedo") and Pedram Vaezi ("Vaezi") filed a complaint against Travelers, Reynolds, County, Weydert, and Coffey, *Sausedo v. Travelers Prop. & Cas. Co.*, 2:09–cv–01477–LKK–GGH, arising out of their arrests under similar facts. Plaintiffs concurrently filed a notice of related cases to *Ambrose v. Coffey*, 2:08–cv–01664–LKKGGH. On June 16, 2009, the court consolidated *Ambrose* and *Sausedo*.

On July 27, 2009, plaintiff Michael Yates ("Yates") filed a virtually identical complaint as *Sausedo* against the same defendants, *Yates v. Travelers Prop. & Cas. Co.*, 2:09–cv–02062–LKK–GGH. Yates filed a notice of related cases with his complaint to *Ambrose* and *Sausedo*. On August 3, 2009, the court ordered the cases related, and on September 2, 2009, the court consolidated *Yates* with *Ambrose* and *Sausedo*.

On September 21, 2009, plaintiff Wilmer D. Origel ("Origel") filed a complaint virtually identical to those of *Sausedo* and *Yates, Origel v. Travlers Prop. & Cas. Co*, 2:09–02640–LKK–GGH. On October 2, 2009, Origel filed a notice of related cases with *Ambrose, Sausedo*, and *Yates*. On October 30, 2009, the court ordered *Origel* related to *Ambrose, Sausedo*, and Yates. On January 27, 2009, the court consolidated *Origel* with *Ambrose, Sausedo*, and *Yates*.

On December 24, 2009, this court granted Weydert, and Coffey's motion to dismiss on grounds of qualified immunity; plaintiffs did not oppose dismissal of their claims against the County. On January

12, 2010, plaintiffs Sausedo and Vaezi, Yates, and Origel filed amended complaints. On January 26, 2010, County, Weydert, and Coffey moved to dismiss these complaints. Travelers and Reynolds also moved to dismiss these complaints at that time. On January 27, 2010, these plaintiffs filed two separate, but identical, motions for reconsideration of this court's order. On February 5, 2010, Travelers and Reynolds filed a motion for judgment on the pleadings as to plaintiff Ambrose's complaint. All motions were timely opposed.

### B. Factual Allegations[1]

### 1. Plaintiffs' Chiropractic Practice

Plaintiffs Ambrose, Yates, Sausedo, Vaezi, and Origel are all Doctors of Chiropractic licensed by the State of California Board of Chiropractic Examiners ("BCE"). Ambrose First Amended Complaint, Doc. 45, ("AFAC") ¶ 2; Yates First Amended Complaint, Doc. 66, ("YFAC") ¶ 3; Origel First Amended Complaint, Doc. 67, ("OFAC") ¶ 3; Sausedo and Vaezi First Amended Complaint, Doc. 65, ("SFAC") ¶ 3. The BCE is a state agency charged with regulating the chiropractic profession. YFAC ¶ 8; OFAC ¶ 8; SFAC ¶ 8. In their capacity as chiropractors, plaintiffs all provided services to patients who received medical benefits through workers' compensation insurance. AFAC ¶ 2; YFAC ¶ 3; OFAC ¶ 3; SFAC ¶ 3. As part of their practice, plaintiffs performed a chiropractic procedure called Manipulation Under Anesthesia ("MUA"). AFAC ¶¶ 8; YFAC ¶¶ 9, 17; OFAC ¶¶ 9, 14; SFAC ¶¶ 9, 17. Plaintiff Ambrose explains in his FAC that during an MUA, a chiropractor performs manipulation of a patient who has been anesthetized by a medical doctor. AFAC ¶ 8. But for the addition of anesthesia and

the setting of a hospital, plaintiffs allege MUAs employ the same techniques as routine chiropractic practice. YFAC ¶ 12; OFAC ¶ 12; SFAC ¶ 12.

On September 13, 1990, the BCE adopted a policy statement, to wit: "a proper chiropractic adjustment, if within the scope of practice § 302, is not made illegal simply because the patient is under anaesthesia." AFAC ¶ 8; YFAC ¶ 9; OFAC ¶ 9; SFAC ¶ 9. Plaintiff Ambrose alleges that MUAs have been recognized as a lawful practice of chiropracty ever since. AFAC ¶ 8. The other plaintiffs argue that in response to subsequent concerns that MUAs exceeded chiropracty's legitimate scope, the BCE signed a "Final Statement of Reasons" recognizing MUAs on October 21, 2004. YFAC ¶ 13; OFAC ¶ 13; SFAC ¶ 13. The BCE reasoned that because chiropractors did not administer the anesthesia themselves, MUAs fell within the scope the BCE's regulations. YFAC ¶ 13; OFAC ¶ 13; SFAC ¶ 13. The BCE reaffirmed its position that MUAs are within the scope of chiropractic practice on January 20, 2005. YFAC ¶ 14; OFAC ¶ 14; SFAC ¶ 14.

Plaintiffs Yates, Origel, Sausedo, and Vaezi contend that Suzanne Honor, the worker's compensation manager of the Division of Worker's Compensation ("DWC") for the State of California, regularly spoke at DWC educational conferences on how to properly bill MUAs. YFAC ¶ 15; OFAC ¶ 15; SFAC ¶ 15.

Moreover, the State Compensation Insurance Fund ("SCIF") regularly pre-approved MUAs, and the Worker's Compensation Appeals Board ("WCAB") on several occasions ordered payment for MUAS from defendant Travelers. AFAC ¶ 8; YFAC ¶¶ 16, 18; OFAC ¶¶ 16, 18;

---

1. The allegations described herein are taken from complaints, and are taken as true for the purpose of the pending motion only.

SFAC ¶¶ 16, 18. In reliance upon the statements of state agencies, the plaintiffs all believed that MUAS were within the scope of their chiropractic practice and, consequently, performed them. AFAC ¶ 8; YFAC ¶ 17; OFAC ¶ 17; SFAC ¶ 17. Plaintiffs Sausedo and Vaezi routinely performed MUAS at Med–1 Medical Center. SFAC ¶ 17. Plaintiff Yates performed MUAS as an employee of Sierra Hills Surgery Center. YFAC ¶ 17. Plaintiff Origel was a part owner of both facilities. OFAC ¶ 27.

### 2. Travelers Initiates Criminal Investigations

Defendants Travelers, a licensed insurance provider within California, provides workers' compensation benefits. AFAC ¶ 3; YFAC ¶ 4; OFAC ¶ 4; SFAC ¶ 4. Plaintiffs allege that Travelers owed them all substantial debts for chiropractic services to be paid for through workers' compensation insurance. *Id.* Plaintiffs Yates, Origel, Sausedo and Vaezi allege that Travelers had unsuccessfully challenged MUA payments owed to chiropractors associated with Sierra Hills and Med–1. YFAC ¶ 24; OFAC ¶ 25; SFAC ¶ 24. They further allege that on December 24, 2003, the WCAB mandated that Travelers pay liens against them for MUAS performed at Sierra Hills. YFAC ¶ 25; OFAC ¶ 26; SFAC ¶ 25.

Plaintiffs allege that the number and frequency of MUAs they performed to be paid through worker's compensation, led Travelers to pursue criminal actions against them in order to prevent future claims and to avoid paying outstanding claims. AFAC ¶ 8; YFAC ¶ 20; OFAC ¶ 20; SFAC ¶ 20. Plaintiffs contend that defendant Reynolds, an employee of Travelers acting under the authorization of his employer, submitted Requests for Prosecution to District Attorney offices in Alameda, Contra Costa, Stanislaus, and San Joaquin counties in 2002. AFAC ¶ 10;

YFAC ¶¶ 5, 22, 23; OFAC ¶¶ 23, 24; SFAC ¶¶ 23, 23. San Joaquin County prosecutors responded to Reynolds request, and plaintiffs allege that Reynolds took an active role in the subsequent investigation of Med–1 Medical Center and Sierra Hills with agents of the San Joaquin County District Attorney's Office, including defendant Coffey. AFAC ¶ 11; YFAC ¶ 23; OFAC ¶ 24; SFAC ¶ 23. According to plaintiffs, all defendants were aware that MUAs were within the scope of practice of licensed chiropractors. AFAC ¶ 8; YFAC ¶ 8; OFAC ¶ 8; SFAC ¶ 8.

During the investigation plaintiff Ambrose purports to have entered into a "No Prosecution Agreement" with defendant Weydert on September 18, 2003. AFAC ¶ 6. According to Ambrose, Weydert agreed not to prosecute Ambrose for insurance fraud in exchange for a statement under oath regarding billing procedures at Med–1 Medical Center, Unique Health Care Management, and plaintiff Origel's practice. *Id.* The agreement specified that it was subject to termination upon a finding of material dishonesty and a motion to withdraw granted by a judicial officer. *Id.*

### 3. District Attorney Files and Dismisses Criminal Charges Against Plaintiffs

Defendants Weydert filed a criminal complaint against Origel, part-owner of Med–1 and Sierra Hills, on January 5, 2005, alleging a variety of criminal offenses related to the practice of administering and billing MUAs. OFAC ¶¶ 27, 29. Origel was arrested on January 19, 2005. OFAC ¶ 27. Following the arrest, Travelers moved for a stay of all collection efforts by Med–1 and Sierra Hills for the payment of MUAs performed by plaintiffs and other chiropractors. YFAC ¶ 26; OFAC ¶ 27; SFAC ¶ 26. On May 1, 2006, a preliminary hearing was conducted in the matter of Origel's trial. OFAC ¶ 27.

Plaintiff Origel was held to answer on June 15, 2006. *Id.* The case against plaintiff Origel proceeded to jury trial, and resulted in a mistrial. *Id.*

On August 23, 2005, defendant Weydert filed criminal complaints against plaintiffs Ambrose, Yates, Sausedo, and Vaezi alleging a host of felony offenses premised on the illegality of MUAS. AFAC ¶ 7; YFAC ¶ 28; SFAC ¶ 28. Plaintiff Ambrose contends that the complaint was filed against him in violation of the "No Prosecution Agreement." AFAC ¶ 7.

The criminal charges against plaintiff Ambrose were dismissed after a hearing on Ambrose's motion to dismiss on August 15, 2006. AFAC ¶ 7. Ambrose did not indicate the grounds upon which the trial court dismissed the criminal charges. The criminal complaints against plaintiffs Sausedo and Vaezi were dismissed on March 11, 2008, on the ground of insufficient evidence and in the interest of justice. SFAC ¶ 28. On July 29 2008, defendants Weydert filed a first amended information against plaintiff Origel. OFAC ¶ 29. All charges against Origel were later dismissed on November 20, 2008 in the interests of justice. *Id.* All criminal charges against Yates were dismissed in the interest of justice on Dec. 11, 2008. YFAC ¶ 29.

For about a year, starting in July 2006, Weydert also made several public statements concerning his prosecution of the chiropractors who perform MUAs, and lobbied against the BCE's adoption of a policy permitting the practice of MUAs by chiropractors. YFAC ¶¶ 37–39; OFAC ¶¶ 37–39; SFAC ¶¶ 37–39.

## II. STANDARDS

### A. Standard for a Motion for Reconsideration

■ The court may grant reconsideration of a final judgment under Federal Rules of Civil Procedure 59(e) and 60(b).

Generally, a motion for reconsideration of a final judgment is appropriately brought under Federal Rule of Civil Procedure 59(e). See *Backlund v. Barnhart,* 778 F.2d 1386, 1388 (9th Cir.1985) (discussing reconsideration of summary judgment). The motion must be filed no later than ten days after entry of the judgment. See Fed.R.Civ.P. 59(e). Under Rule 59(e), three grounds may justify reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error or prevent manifest injustice. See *Kern–Tulare Water Dist. v. City of Bakersfield,* 634 F.Supp. 656, 665 (E.D.Cal.1986), *rev'd* in part on other grounds, 828 F.2d 514 (9th Cir.1987).

Under Rule 60(b), the court may grant reconsideration of a final judgment and any order based on, among other things: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which, with reasonable diligence, could not have been discovered within ten days of entry of judgment; and (3) fraud, misrepresentation, or misconduct of an opposing party. A motion for reconsideration on any of these ground must be brought within a reasonable time and no later than one year of entry of judgment or the order being challenged. See Fed. R.Civ.P. 60(c)(1). A Rule 60(b) motion may also be brought for "any other reason that justifies relief." Fed.R.Civ.P. 60(b)(6).

Pursuant to Eastern District of California Local Rule 230(j), when a party asks for reconsideration of a order granting or denying a motion, the party is to set forth the material facts and circumstances surrounding each motion for which reconsideration is sought, including:

(1) when and to what Judge or Magistrate Judge the prior motion was made,

(2) what ruling, decision or order was made thereon,

(3) what new or different facts or circumstances are claimed to exist which did not exist or were not shown upon such prior motion, or what other grounds exist for the motion, and

(4) why the facts or circumstances were not shown at the time of the prior motion.

L.R. 230(j).

## B. Standard for a Motion to Dismiss

A Fed.R.Civ.P. 12(b)(6) motion challenges a complaint's compliance with the pleading requirements provided by the Federal Rules. In general, these requirements are established by Fed.R.Civ.P. 8, although claims that "sound[ ] in" fraud or mistake must meet the requirements provided by Fed.R.Civ.P. 9(b). *Vess v. Ciba–Geigy Corp.*, 317 F.3d 1097, 1103–04 (9th Cir.2003).

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The complaint must give defendant "fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (internal quotation and modification omitted).

To meet this requirement, the complaint must be supported by factual allegations. *Ashcroft v. Iqbal,* — U.S. ——, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009). "While legal conclusions can provide the framework of a complaint," neither legal conclusions nor conclusory statements are themselves sufficient, and such statements are not entitled to a presumption of truth. *Id.* at 1949–50. *Iqbal* and *Twombly* therefore prescribe a two step process for evaluation of motions to dismiss. The court first identifies the non-conclusory factual allegations, and the court then determines whether these allegations, taken as true and construed in the light most favorable to the plaintiff, "plausibly give rise to an entitlement to relief." *Id.; Erickson v. Pardus,* 551 U.S. 89, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007).[2]

■ "Plausibility," as it is used in *Twombly* and *Iqbal,* does not refer to the likelihood that a pleader will succeed in proving the allegations. Instead, it refers to whether the nonconclusory factual allegations, when assumed to be true, "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly,* 550 U.S. at 557, 127 S.Ct. 1955). A complaint may fail to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir.1988).

■ The line between non-conclusory and conclusory allegations is not always clear. Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal,* 129 S.Ct. at 1949 (quoting *Twombly,* 550 U.S.

---

**2.** As discussed below, the court may consider certain limited evidence on a motion to dismiss. As an exception to the general rule that non-conclusory factual allegations must be accepted as true on a motion to dismiss, the court need not accept allegations as true when they are contradicted by this evidence. *See Mullis v. United States Bankr. Ct.,* 828 F.2d 1385, 1388 (9th Cir.1987), *Durning v. First Boston Corp.,* 815 F.2d 1265, 1267 (9th Cir.1987).

at 555, 127 S.Ct. 1955). While *Twombly* was not the first case that directed the district courts to disregard "conclusory" allegations, the court turns to *Iqbal* and *Twombly* for indications of the Supreme Court's current understanding of the term. In *Twombly*, the Court found the naked allegation that "defendants 'ha[d] entered into a contract, combination or conspiracy to prevent competitive entry ... and ha[d] agreed not to compete with one another,'" absent any supporting allegation of underlying details, to be a conclusory statement of the elements of an anti-trust claim. *Id.* at 1950 (quoting *Twombly*, 550 U.S. at 551, 127 S.Ct. 1955). In contrast, the *Twombly* plaintiffs' allegations of "parallel conduct" were not conclusory, because plaintiffs had alleged specific acts argued to constitute parallel conduct. *Twombly*, 550 U.S. at 550–51, 556, 127 S.Ct. 1955.

*Twombly* also illustrated the second, "plausibility" step of the analysis by providing an example of a complaint that failed and a complaint that satisfied this step. The complaint at issue in *Twombly* failed. While the *Twombly* plaintiffs' allegations regarding parallel conduct were non-conclusory, they failed to support a plausible claim. *Id.* at 566, 127 S.Ct. 1955. Because parallel conduct was said to be ordinarily expected to arise without a prohibited agreement, an allegation of parallel conduct was insufficient to support the inference that a prohibited agreement existed. *Id.* Absent such an agreement, plaintiffs were not entitled to relief. *Id.*[3]

In contrast, *Twombly* held that the model pleading for negligence demonstrated the type of pleading that satisfies Rule 8. *Id.* at 565 n. 10, 127 S.Ct. 1955. This form provides "On June 1, 1936, in a public highway called Boylston Street in Boston, Massachusetts, defendant negligently drove a motor vehicle against plaintiff who was then crossing said highway." Form 9, Complaint for Negligence, Forms App., Fed. Rules Civ. Proc., 28 U.S.C.App., p 829. These allegations adequately "'state[ ] ... circumstances, occurrences, and events in support of the claim presented.'" *Twombly*, 550 U.S. at 556 n. 3, 127 S.Ct. 1955 (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, at 94, 95 (3d ed.2004)). The factual allegations that defendant drove at a certain time and hit plaintiff render plausible the conclusion that defendant drove negligently.

### C. Standard for Judgment on the Pleadings

▮ A motion for judgment on the pleadings may be brought "[a]fter the pleadings are closed but within such time as to not delay the trial." Fed.R.Civ.P. 12(c). All allegations of fact by the party opposing a motion for judgment on the pleadings are accepted as true. *Doleman v. Meiji Mut. Life Ins. Co.*, 727 F.2d 1480, 1482 (9th Cir.1984). A "dismissal on the pleadings for failure to state a claim is proper only if 'the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law.'" *Id.* (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 1368, at 690 (1969)); *see also McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 810 (9th Cir. 1988).

When a Rule 12(c) motion is used to raise the defense of failure to state a claim, the motion is subject to the same test as a motion under Rule 12(b)(6). *McGlinchy*,

---

**3.** This judge must confess that it does not appear self-evident that parallel conduct is to be expected in all circumstances and thus would seem to require evidence. Of course, the Supreme Court has spoken and thus this court's own doubt needs only be noted, but cannot form the basis of a ruling.

845 F.2d at 810; *Aldabe v. Aldabe,* 616 F.2d 1089, 1093 (9th Cir.1989). Thus, the motion will be granted only if the movant establishes that "no relief could be granted under any set of facts that could be proven consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *see also Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Newman v. Universal Pictures,* 813 F.2d 1519, 1521–22 (9th Cir.1987). The court must accept all material allegations of the complaint as true and all doubts must be resolved in the light most favorable to the plaintiff. *N.L. Indus. Inc. v. Kaplan,* 792 F.2d 896, 898 (9th Cir.1986).

## III. ANALYSIS

### A. Motions for Reconsideration of December 24, 2009 Order

Plaintiffs move for reconsideration of this court's December 24, 2009 order granting defendants Coffey, Weydert, and County's motion to dismiss premised on qualified immunity.[4] Specifically, the court held that these defendants were entitled to qualified immunity because it was not clearly established that the performance of MUAs by licensed chiropractors in California was legal. Because plaintiffs articulated all of their claims to depend on MUAs being lawful, plaintiffs could not show that a prosecutor or prosecution investigator could not reasonably believe that his conduct complied with the law. *See Pearson v. Callahan,* 555 U.S. ——, 129 S.Ct. 808, 822, 172 L.Ed.2d 565 (2009).[5]

### 1. Whether a Reasonable Prosecutor or Prosecution Investigator Could Have Believed He was Not Violating Clearly Established Law.

### a. Whether it Was Clearly Established That MUAs Were Lawful at the Time of Plaintiffs' Arrests and Prosecutions.

■ Plaintiffs argue that the performance of MUAs was lawful at the time they were arrested and prosecuted. In support of this argument, plaintiffs submit new evidence that they claim was not submitted in opposition to defendants' motion to dismiss because it was "either unavailable at the time of the motion to dismiss, or was outside the scope of the pleadings and not subject to judicial notice or consideration in the motion."[6] Motion for Reconsideration at 1. Plaintiffs argue that in light of this new evidence, no reasonable prosecutor would have prosecuted plaintiffs. This is a different legal argument than that raised by plaintiffs in their oppositions to defendants' motions to dismiss. Moreover, the court notes that the arguments raised by plaintiffs as to the nature of their claims in their original complaints entirely depended on MUAs being lawful (i.e. defendants prosecuted plaintiffs for performing MUAs knowing that the performance of MUAs was lawful), not on whether prosecuting plaintiffs in light of. the available evidence was unreasonable.

Nonetheless, for clarity's sake, the court will briefly discuss whether this evidence shows that it was clearly established that MUAs were lawful, the necessary predi-

---

4. Plaintiffs did not oppose the dismissal of all claims as to County.

5. Plaintiffs Sausedo, Vaezi, and Yates again filed an identical motion to Plaintiff Origel. The court notes that plaintiffs are encouraged to file one motion where they are making identical arguments or for parties represented by different counsel to join in the others'

motions, rather than file duplicate motions. Nonetheless, for convenience, this court will cite to Sausedo, Vaezi, and Yates's motion. This order, however, applies to both motions.

6. Because the court denies plaintiffs' motion for reconsideration as it relates to these documents, it does not decide whether this evidence should be considered in this motion.

cate to plaintiffs' arguments concerning their original complaint. Essentially, while plaintiffs' evidence shows that it was reasonable, and perhaps even more reasonable, to believe that MUAs were lawful, it does not demonstrate that it was unreasonable for Weydert and Coffey to believe that the performance of MUAs by chiropractors violated California law. At the time of plaintiffs' arrests and during plaintiffs' prosecutions, the evidence was at least unsettled. In fact, some of plaintiffs' evidence demonstrates that the legality of MUAs was not clearly established at these times. Specifically, plaintiffs have submitted evidence that the issue of the legality of MUAs was, at least, an open question to which there was significant debate. Furthermore, the February 16, 2010 approval by the State of California Office of Administrative Law of the regulation setting forth the standard of care for the performance of MUAs, indicates that the law was unsettled on whether such performance was lawful prior to the approval. Accordingly, plaintiffs' motion for reconsideration is denied on this ground.

**b. Whether it Was Clearly Established That Prosecuting Plaintiffs for Performing MUAs Was Constitutional.**

In their motion for reconsideration, plaintiffs raise a new argument that does not suffer from the infirmities of the 17 arguments upon which they previously relied. Essentially, plaintiffs argue that in light of the substantial evidence indicating that licensed chiropractors in California could legally perform MUAs at the time of plaintiffs' prosecutions, no prosecutor or prosecution investigator could reasonably believe they were not violating clearly established law. Unlike the scenario described above, the clearly established law was not the lawfulness of MUAs, but rather whether plaintiffs had fair warning or

fair notice that their conduct in performing MUAs was unlawful. Because defendants were aware of the numerous statements by the Board of Chiropractors that strongly suggested that chiropractors could lawfully perform MUAs as well as of the Workers' Compensation Board's approval of claims for the performance of MUAs, plaintiffs argue, Weydert and Coffey could not have reasonably believed that plaintiffs had fair notice that their conduct was unlawful. Plaintiffs did not raise this argument in opposing defendants' motions to dismiss, and provide no reason as to why this argument was not previously raised. Accordingly, the court does not consider this argument in disposing of plaintiffs' motions to reconsider. However, as discussed below, the court holds that this argument does not depend on MUAs being lawful, and thereby, Weydert and Coffey are not entitled to qualified immunity on this theory of liability.[7]

**c. Whether Plaintiffs Have Stated a Claim that Weydert and Coffey Acted Without Probable Cause Even Though It Was Not Clearly Established that Performance of MUAs was Lawful.**

In its December 24, 2009 order the court held that because it was not clearly established that the performance of MUAs was lawful, defendants Weydert and Coffey were entitled to qualified immunity on plaintiffs' claims under the Fourth Amendment for unlawful search, seizure, and arrest and for malicious prosecution. In their oppositions to the motions to dismiss, plaintiffs predicated their theories on probable cause upon MUAs being lawful. As such, the court dismissed both the Fourth Amendment and malicious prosecution claims that require lack of probable cause. Nonetheless, as this case has been

---

**7.** Weydert, however, is entitled to absolute immunity as to all prosecutorial conduct.

This immunity is discussed in the following section.

developing, the court has become aware of facts and theories of liability under which plaintiffs may state a claim based upon the lack of probable cause that does not depend on MUAs being lawful. Even though plaintiffs have not directly argued in their motion to reconsider that the court reconsider its application of qualified immunity to its conclusion concerning probable cause, plaintiffs' arguments in these series of motions to a certain degree suggest that the court reconsider this conclusion. Upon further reconsideration, the court holds that plaintiff had alleged facts which can support a claim premised on lack of probable cause. These allegations, however, only cause the court to revisit its dismissal of the malicious prosecution claims because plaintiffs' unlawful search, seizure, and arrest claims are barred by the statute of limitations.

█ The Ninth Circuit has held that "a plaintiff can rebut a *prima facie* finding of probable cause ... by showing that the criminal prosecution was induced by fraud, corruption, perjury, fabricated evidence, or other wrongful conduct taken in bad faith." *Awabdy v. City of Adelanto,* 368 F.3d 1062, 1067 (9th Cir.2004); *see also Cunningham v. City of Wenatchee,* 345 F.3d 802, 812 (9th Cir.2003) ("A police officer's failure to preserve or collect potential exculpatory evidence does not violate the Due Process Clause unless the officer acted in bad faith."). Accordingly, even though Weydert and Coffey could have acted reasonably in believing they had probable cause to prosecute plaintiffs for the performance of MUAs, where plaintiffs have alleged that the criminal prosecutions were induced by corruption or other wrongful conduct taken in bad faith, they have alleged facts that could support a finding of lack of probable cause. Here, plaintiffs have alleged facts that, if proven, could demonstrate that Weydert and Coffey acted in bad faith. Specifically, these facts could show that Weydert and Coffey

caused charges to be brought against plaintiffs for the sole purpose of preventing Travelers, an insurance company, from paying money it owed to plaintiffs. These facts are sufficient to state a claim that the prosecutions lacked probable cause because they were induced by conduct taken in bad faith.

█ In the prior order, this court dismissed plaintiffs' Fourth Amendment claims under the theory that Weydert and Coffey could have reasonably believed that they had probable cause to prosecute plaintiffs. For the reasons discussed above, the court holds that plaintiffs can state claims that depend on the lack of probable cause even if it is not clearly established that the performance of MUAs was lawful. Accordingly, the grounds for dismissal of the Fourth Amendment claim are no longer valid. This claim, however, should be dismissed on alternate grounds. Specifically, in the motions to dismiss considered in the December 24, 2009 order, defendants moved to dismiss the false imprisonment claim on the grounds that they are barred by the statute of limitations. The court agrees for the reasons this claim was dismissed from Ambrose's original complaint on November 13, 2008. In short, in California, the statute of limitations for Section 1983 claims is two years. *See Wilson v. Garcia,* 471 U.S. 261, 279–80, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985) (The statute of limitations for Section 1983 claims is borrowed from the forum state's state of limitations for personal injury claims.), Cal.Civ.Proc.Code § 335.1 (West 2008) (Statute of limitations for personal injury claims in California is two years.). The statute of limitations period begins "when the plaintiff knows or has reason to know of the injury that is the basis for the action." *Elliott v. City of Union City,* 25 F.3d 800, 802 (9th Cir.1994). In false arrest claims, however, the limitations period begins to run only after the false imprison-

ment ends. *Wallace v. Kato*, 549 U.S. 384, 389, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007) ("[F]alse imprisonment ends once the victim becomes held *pursuant to [legal] process*—when, for example, he is bound over by a magistrate or arraigned on charges.") (emphasis in original). Thus, the limitations periods for Sausedo's, Vaezi's, and Yates' claims began to run on August 23, 2005, and for Origel's claim began to run on January 5, 2005. As such, the limitations periods for plaintiffs' claims expired in 2007. Plaintiffs did not file their complaints until 2009, and have not alleged any facts in support of equitable tolling. For these reasons, the court dismisses plaintiffs' false arrest claims on alternate grounds.[8]

■ Plaintiffs also brought claims for unlawful search and seizure. Plaintiffs have not alleged any facts in support of a claim for an unlawful search and have not alleged any facts in support of a unlawful seizure claim outside of the false arrest claim which the court disposed above (e.g. plaintiffs do not argue that their seizures were unlawful because the officers used excessive force). Thus, plaintiff has not stated a claim upon which they are entitled to relief under these Fourth Amendment theories. For these reasons, the court's dismissal of these claims also remains unchanged.

■ Nonetheless, the court reconsiders its dismissal of plaintiffs' malicious prosecution claims as to Weydert and Coffey. These defendants, however, made two additional arguments in support of their original motion to dismiss Sausedo and Vaezi's, Yates', and Origel's complaint. First, they argue that these plaintiffs did not allege malice. "The malice required in an action for malicious prosecution is not limited to actual hostility or ill will toward plaintiff but exists when the proceedings are instituted primarily for an improper purpose .... [P]roceedings are initiated for an improper purpose [when, for example] the person initiated them does not believe that his claim may be held valid." *Albertson v. Raboff*, 46 Cal.2d 375, 383, 295 P.2d 405 (1956). Here, plaintiffs have clearly alleged facts to support a finding of malice. Specifically, plaintiffs have alleged facts that, if proved, would show that Weydert and Coffey initiated prosecutions against plaintiffs not because they believed they were violating the law, but rather in order to advance the financial interest of an insurance company, defendant Travelers. Accordingly, defendants' motion is denied on this ground.

Second, defendants argue that plaintiff Yates and Origel have not stated a claim for malicious prosecution because they were held to answer. This argument depends on two theories, that because they were held to answer, (1) there was no favorable termination of their claims and (2) the claims were brought with probable cause. As to argument based on probable cause, for the reasons described above, plaintiffs have pled facts to support a claim for lack of probable cause under a theory that the criminal prosecutions were induced by corruption or other wrongful conduct taken in bad faith. *See Awabdy*, 368 F.3d at 1067. Additionally, the argument based on favorable determination does not warrant dismissal for the reasons discussed in Section C.3.a. of this order.

■ Defendant Weydert also argued that he is entitled to absolute immunity for the conduct alleged in support of the malicious prosecution claim. As described in greater detail in Section B.1.d., Weydert is

---

**8.** The court also notes that while plaintiffs opposed dismissal of these claims on this ground in opposition to the motions to dismiss in the December 24, 2009 order, they now do not oppose dismissal of these claims in defendant Travelers and Reynolds' motion to dismiss their amended complaints.

absolutely immune only for the conduct of initiating a prosecution and presenting the State's case. *Miller v. Gammie,* 335 F.3d 889, 896 (9th Cir.2003) (quoting *Imbler v. Pachtman,* 424 U.S. 409, 431, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976)). Under California law, "the malicious prosecution plaintiff must plead and prove that the prior proceeding [was] commenced by or at the direction of the malicious prosecution defendant." *Womack v. County of Amador,* 551 F.Supp.2d 1017, 1031 (E.D.Cal.2008) (citing *Sagonowsky v. More,* 64 Cal. App.4th 122, 128, 75 Cal.Rptr.2d 118 (1998) and *Villa v. Cole,* 4 Cal.App.4th 1327, 1335, 6 Cal.Rptr.2d 644 (1992)). As such, Weydert is absolutely immune for any conduct that could support a malicious prosecution claim against him. Thus, the court does dismiss this claim as to Weydert on alternative grounds.

In conclusion, the court reconsiders its reasoning concerning probable cause in its December 24, 2009 order. As a practical matter, however, this reasoning only cause the court to reconsider its decision dismissing plaintiffs' malicious prosecution claim against Coffey. Accordingly, the court denies Coffey's motion to dismiss plaintiffs' malicious prosecution claims.

### B. Coffey, Weydert, and County's Motion to Dismiss Sausedo and Vaezi's, Yates's, and Origel's First Amended Complaints.

Defendants move to dismiss the amended complaints filed by defendants Sausedo and Vaezi, Yates, and Origel after this court's order dismissing their original complaints on the grounds of qualified immunity. For the reasons described below, the government defendants' motion is granted in part.

### 1. Plaintiffs' Section 1983 Claims

#### a. Conceded Claims.

Plaintiffs concede that they have not pled claims against County nor have they pled common law malicious prosecution claims against the County, Weydert, and Coffey. As such, these claims are dismissed. Additionally, subsequent to defendants filing their motion to dismiss, plaintiffs Sausedo and Vaezi, Yates and Origel entered notices of dismissal against County. County is hereby dismissed with prejudice.

#### b. Defendants Entitled to Qualified Immunity Insofar as Plaintiffs' Claims Depend on MUAs Being Lawful.

As discussed above, this court's December 24, 2009 order held that it was not clearly established that MUAs were lawful at the time of plaintiffs' prosecutions. This court has subsequently reconsidered its decision that the government defendants could have reasonably believed the charges were brought with probable cause because the legality of MUAs was not clearly established. Accordingly, plaintiffs' claims are dismissed insofar as they rely on the performance of MUAs being lawful. However, upon close review of plaintiffs' complaints, the court cannot determine the legal theories upon which plaintiffs' section 1983 claims rely. In opposing this motion, plaintiffs do not provide the court with a clear explanation of the legal theories they seek to bring. As such, the court orders that plaintiffs shall amend their complaints such that (1) their legal theories do not depend on MUAs being lawful as to Weydert and Coffey;[9] (2) separately identify each theory of liability under section 1983;[10] (3) identify the

---

**9.** This, of course, is different than alleging a theory relying upon defendants' knowledge of evidence suggesting that MUAs are legal or defendants' belief that MUAs are legal.

**10.** For example, First Cause of Action, Violation of Plaintiffs' Due Process Rights Under Section 1983; etc.

conduct of defendants that caused the violation of plaintiffs' civil rights, so long as defendants are not entitled to immunity for such conduct, as described below; and (4) either file one operative complaint for all four consolidated cases or file one operative complaint for Ambrose, Yates, Sausedo, and Vaezi and one complaint for Origel.

## c. Defendants are Not Entitled to Qualified Immunity As to Plaintiffs' Due Process Claim that Defendants Prosecuted Plaintiffs Without Fair Notice that their Conduct Was Unlawful.

In plaintiffs' oppositions to defendants' motion to dismiss, they raise a theory of liability under the due process clause that does not depend on MUAs being lawful. This theory is based upon the fair warning rule. The principle behind this rule is that no one "shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed." *U.S. v. Lanier*, 520 U.S. 259, 265, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997) (quoting *Bouie v. City of Columbia*, 378 U.S. 347, 351, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964)). The Court has articulated three manifestations of this general principle. First, the court held that "the vagueness doctrine bars enforcement of a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." *Lanier*, 520 U.S. at 266, 117 S.Ct. 1219 (internal quotation and citations omitted). Second, the "rule of lenity, ensures fair warning by so resolving ambiguity in a criminal statute as to apply it only to conduct clearly covered." *Id.* (internal citations omitted). Third, the Court concluded that, "although clarity at the requisite level may be supplied by judicial gloss on an otherwise uncertain statute, ... due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope ...." *Id.* (internal citations omitted).

Here, application of the third manifestation of the fair warning rule is most appropriate. Plaintiffs have alleged that defendants prosecuted them knowing both that most information available to plaintiffs strongly suggested that the performance of MUAs by chiropractors in California was lawful and that no chiropractor in California had been prosecuted for performing MUAs. Furthermore, plaintiffs allege that these prosecutions were motivated by an improper interest to aid the insurance company defendants' efforts to resist making payments to plaintiffs for the performance of the MUAs. Accordingly, plaintiffs argue that defendants knowingly applied a novel construction of several criminal statutes against them.

Plaintiffs continue to argue that bringing these charges knowing that plaintiffs lack fair warning and for improper purposes creates civil liability against those defendants. In support of this argument, plaintiffs cite to cases which hold that imposing a sanction against an individual who lacks notice that his conduct was prohibited constitutes a due process violation. *See, e.g., Newell v. Sauser*, 79 F.3d 115, 118 (9th Cir.1996) (Prison officer not entitled to qualified immunity because a "reasonable officer would have known that [the] general regulation [at issue] did not give [plaintiff] adequate notice that his conduct was forbidden" where plaintiff was sanctioned for violating regulation.). These cases are not directly on point because here ultimately it may be argued that no sanctions were imposed upon plaintiffs. Nonetheless, the standard for qualified immunity does not require the existence of cases concerning "fundamentally similar" or even "materially similar" facts. *Hope v. Pelzer*, 536 U.S. 730, 741, 122 S.Ct.

2508, 153 L.Ed.2d 666 (2002). Rather, "the salient question ... is whether the state of the law [at the time of plaintiffs' prosecutions] gave [defendants] fair warning that their [conduct] was unconstitutional." *Id.*

Here, the state of the law indicated both that the Due Process Clause of the Constitution prohibits the enforcement of a criminal statute against individuals who lack fair warning that their conduct violates the statute and that imposing a sanction against individuals without notice that their conduct is sanctionable also violates the Due Process Clause. Given these two lines of reasoning, defendants could not have reasonably believed that prosecuting plaintiffs for performing MUAs was lawful. Thus, plaintiffs have stated a claim for violation of due process for which Weydert and Coffey are not entitled to qualified immunity.[11]

**d. Defendant Weydert is Entitled to Absolute Immunity As to Plaintiff's Due Process Argument Only Insofar as His Conduct Was "Prosecutorial."**

 As this court stated in its November 13, 2008 order, prosecutors enjoy absolute immunity from suits under section 1983 "when performing the traditional functions of an advocate." *Kalina v. Fletcher,* 522 U.S. 118, 131, 118 S.Ct. 502,

139 L.Ed.2d 471 (1997). Prosecutors are absolutely immune "[o]nly when 'initiating a prosecution and in presenting the State's case.'" *Miller v. Gammie,* 335 F.3d 889, 896 (9th Cir.2003) (quoting *Imbler v. Pachtman,* 424 U.S. 409, 431, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976)). The Supreme Court has held that prosecutors are not immune when they personally attest to facts, *Kalina,* 522 U.S. at 130, 118 S.Ct. 502; act as an investigator, *id.;* advise law enforcement officers, *Burns v. Reed,* 500 U.S. 478, 492–96, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991); or speak to the media, *Buckley v. Fitzsimmons,* 509 U.S. 259, 277–78, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993). As noted in the courts December 24, 2009 order, prosecutors are entitled to qualified immunity when serving these non-prosecutorial functions. *Id.* at 269, 113 S.Ct. 2606.

Plaintiffs have alleged that Weydert engaged in acts that constitute non-prosecutorial functions. As the court explained in its 2008 order, "[t]he question, however, is not whether Weydert has engaged in any non-prosecutorial acts, but whether the specific acts forming the basis of plaintiff's particular claims were or were not prosecutorial." [12] Again, however, the court cannot determine from the face of plaintiffs' complaints or even from plaintiffs' briefs what plaintiffs' claims are, aside

---

**11.** Plaintiffs also argue that their arrest warrants lacked probable cause because defendants did not present exculpatory evidence when seeking such warrants. The court does not decide whether such an argument has merit because, as discussed below, plaintiffs' false arrest claims are barred by the statute of limitations.

**12.** The court notes that the Supreme Court has held that the determination of whether a prosecutor is entitled to absolute immunity as to specific conduct is separate from the court's analysis as to whether that conduct caused a plaintiff's injury. *Buckley,* 509 U.S. at 271, 113 S.Ct. 2606 (The functional "ap-

proach focuses on the conduct for which immunity is claimed, not on the harm that the conduct may have caused or the question whether it was lawful. The location of the injury may[, however] be relevant to the question whether a complaint has adequately alleged a cause of action for damages."). Here Weydert's motion to dismiss based on absolute immunity combines both stages of the analysis, i.e. defendant argues that plaintiff has failed to state a claim against Weydert because his alleged non-prosecutorial conduct is not sufficient to state a claim for violation of plaintiffs' constitutional rights. Accordingly, the court addresses both steps in the analysis here.

from the fair warning due process claim discussed above. Accordingly, the court at this time only addresses whether Weydert is entitled to absolute immunity as to the fair warning claim. Plaintiffs are instructed when amending their complaints to clearly articulate the specific legal theories under which they seek to hold Weydert liable, as described above, Weydert's specific conduct for which he is not absolutely immune, and the causal connection between this conduct and plaintiffs' constitutional injuries.[13]

■■ As to plaintiffs' due process claim arising out of the fair warning rule, plaintiffs have not alleged a sufficient causal connection between Weydert's non-prosecutorial conduct and the violation of their rights. Plaintiffs have alleged Weydert engaged in three acts of non-prosecutorial conduct, which caused plaintiffs' injuries.[14] First, plaintiffs allege that Weydert made statements to the press expressing that MUAs were illegal to sway public opinion against plaintiffs. Second, plaintiffs allege that Weydert attended and spoke at the Board of Chiropractic Examiners' meeting on December 14, 2006, intending to delay the Board's vote on whether performing MUAs is within the scope of chiropractic in California. Third, plaintiffs allege that Weydert submitted a declaration to the Workers' Compensation Appeals Board of Stockton, arguing in support of Travelers and State Compensation Fund's petition to stay lien collection proceedings for MUAs in part because of plaintiffs' arrests. The injuries plaintiff allege are "economic losses from the cost of defending themselves against the criminal charges and from the interruption and loss of their right to practice the chiropractic procession, and from damage to reputation; [and] . . . emotional distress." Plaintiffs have stated a plausible claim that Weydert's conduct caused their injuries. However, these allegations in no way support a claim that Weydert violated plaintiffs' due process rights by causing prosecutions against them without fair notice that their conduct was unlawful. Accordingly, plaintiffs' Section 1983 claims are dismissed as to Weydert insofar as they are premised on this theory.[15]

---

**13.** Plaintiffs are also instructed to describe the causal connection between the conduct of the other defendants and the specific constitutional injuries. To the extent that plaintiffs claims depend on their allegedly wrongful prosecutions, plaintiffs ultimately must prove that the defendants' actions, to which they are not entitled to immunity, are the actual and proximate causes of their injuries. *See, e.g., Harper v. City of Los Angeles,* 533 F.3d 1010, 1026, 1028 (9th Cir.2008) ("The presumption of prosecutorial independence protects investigative officers [from damages arising after the prosecutor files a complaint] unless the evidence shows that the officers interfered with the prosecutor's judgment by omitting relevant information or by pressuring the prosecutor to file charges."). While causation is a question of fact, plaintiffs must nonetheless plead plausible allegations that defendants actions caused their injuries. *Twombly,* 550 U.S. at 557, 127 S.Ct. 1955.

**14.** The court notes that plaintiffs' opposition actually only argues for a causal connection between acts of Weydert after the arrests that show that "he knew or should have known the arrests violated Plaintiffs' Fourth Amendment right to be free from unreasonable search and seizure." Opposition at 8. Actions occurring after the arrest, however, obviously could not have caused the arrests though they might bear upon defendants' state of mind preceding the arrests though they might bear upon of state of mind preceding the arrests. That fact, however, appears irrelevant, given absolute immunity. The court alternatively interprets these actions as possible conduct that caused their alleged due process violation.

**15.** Once again, the court notes that absent absolute immunity for prosecution of the offense, this conduct could well bear upon malice.

### e. Defendants Are Not Entitled Any Additional Immunities Under the Doctrine of Sovereign Immunity.

■■■ As this court held in its November 12, 2008 order, for an individual to be protected by a state's sovereign immunity, the individual must be a state official sued in his official capacity.[16] The FACs again suggest that Weydert and Coffey are sued in their individual, rather than official capacities. Nonetheless, even if plaintiffs are bringing claims against Weydert and Coffey in the official capacities, they are local, not "state," officers. Local government officials are only protected by the states' sovereign immunity when the perform state functions. *McMillian v. Monroe County*, 520 U.S. 781, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997). Whether a particular act by a local official constitutes a state function is a question of federal law (in that federal courts will not defer to labels affixed by the state), but the question "will necessarily be dependent on the definition of the official's functions under relevant state law." *Id.* at 786, 117 S.Ct. 1734.

As the court held in 2008, Weydert "act[s] as [a] state official [ ], and so possess[es] Eleventh Amendment immunity, [only] when acting in [a] prosecutorial capacity." *Del Campo v. Kennedy*, 517 F.3d 1070, 1073 (9th Cir.2008) (internal quotations and citations omitted). Thus, the Ninth Circuit has used cases considering prosecutorial immunity in determining prosecutors' eligibility for sovereign immunity. *Ceballos v. Garcetti*, 361 F.3d 1168, 1183 n. 11 (9th Cir.2004), *rev'd on other grounds*, 547 U.S. 410, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006). Thus, if Weydert is being sued in his official capacity, he has sovereign immunity for the same conduct for which he has prosecutorial immunity if sued in his individual capacity. Accordingly, under either theory he is immune from prosecution arising out of the same conduct.

■■■ With respect to Coffey, he again does not address whether any of his acts consisted of "state functions." Coffey bears the burden of demonstrating that he functioned as a state official, and has not met that burden. Thus, Coffey is not entitled to sovereign immunity.

Plaintiffs are instructed when amending the complaints to explicitly identify whether they are suing the government defendants, Weydert and Coffey, in their individual capacities, official capacities, or both. This is the third time this question has been raised to the court, and clarification by plaintiffs will avoid the court issuing this same ruling over and over again.[17]

### C. Reynolds and Travelers' Motion to Dismiss Sausedo and Vaezi's, Yates's, and Origel's First Amended Complaints.

Reynolds and Travelers ("Insurance Defendants") move to dismiss plaintiffs Sausedo and Vaezi's, Yates's, and Origel's Section 1983 claims against them insofar as plaintiff brings malicious prosecution and false arrest claims under the civil rights act. These defendants also seek to apply their arguments to dismiss the Section 1983 malicious prosecution claim to their state law malicious prosecution claim. The Insurance Defendants also move to dismiss on the ground that plaintiffs' amended

16. "A suit against a state official in his or her official capacity is not a suit against the officer but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989).

17. Indeed, the court may well decide that enough is enough and not allow further amendment.

complaints were filed in violation of this court's December 24, 2009 order. Plaintiffs concede that their false arrest claims are barred by the statute of limitations.[18] Accordingly, the Insurance Defendants' motion to dismiss the false arrest claim is granted. For the reasons discussed below, the Insurance Defendants' motion is otherwise denied.

### 1. Plaintiffs' Complaints Were Not Filed in Violation of this Court's December 24, 2009 Order.

On December 24, 2009, this court granted the government defendants' motion to dismiss four of the five operative complaints in this consolidated case on the grounds of qualified immunity. The court also granted plaintiffs leave to amend "for theories of liability that do not depend on MUAs being legal and theories for which Weydert and Coffey would not be entitled to qualified immunity." As described above, plaintiffs have at least met this burden. Accordingly, defendants motion to dismiss on this ground is denied.

### 2. The Court Declines to Strike Plaintiffs' Allegations as to the Legality of MUAs in that the Court's December 24, 2009 Holding Only Applied to Whether Government Defendants Are Entitled to Qualified Immunity, Not Whether MUAs Were Legal.

The Insurance Defendants alternatively move to strike plaintiffs' allegations that MUAs are lawful. This argument misinterprets the court's December 24, 2009 order. The court ordered plaintiffs to amend their complaint to state theories of liability that do not depend on MUAs being lawful as to defendants Weydert and Coffey because they are entitled to qualified immunity on that issue. A theory of liability depending on MUAs being lawful is entirely appropriate as to the Insurance Defendants. Accordingly, defendants motion to strike is denied.

### 3. Plaintiffs Have Stated Claims Against Reynolds and Travelers for Malicious Prosecution Under Section 1983 and state law.

 To succeed on a malicious prosecution claim under Section 1983, a plaintiff must show both the elements of a state law malicious prosecution claim and that the prosecution was brought for the purpose of denying a specific constitutional right. *Womack v. County of Amador*, 551 F.Supp.2d 1017, 1031 (E.D.Cal.2008) (citing *Usher v. City of Los Angeles*, 828 F.2d 556, 562 (9th Cir.1987)), *Ayala v. KC Environmental Health*, 426 F.Supp.2d 1070 (E.D.Cal.2006) (same). Under California law, "the malicious prosecution plaintiff must plead and prove that the prior proceeding commenced by or at the direction of the malicious prosecution defendant, was: (1) pursued to a legal termination favorable to the plaintiff; (2) brought without probable cause; and (3) initiated with malice." *Womack*, 551 F.Supp.2d at 1031 (citing *Sagonowsky v. More*, 64 Cal. App.4th 122, 128, 75 Cal.Rptr.2d 118 (1998) and *Villa v. Cole*, 4 Cal.App.4th 1327, 1335, 6 Cal.Rptr.2d 644 (1992)).

---

18. Plaintiffs are instructed when amending their complaints to carefully review this court's November 13, 2008 and December 24, 2009 orders. In November 2008, this court dismissed plaintiff Ambrose's false arrest claim because it was filed well outside the statute of limitations without allegations of any facts in support of equitable tolling. When amending their complaints, plaintiffs should be careful not to add any claims that this court has already ordered insufficient under Fed.R.Civ.P. 12(b)(6). Plaintiffs are, of course, free to amend to add new theories of liability under the same constitutional or statutory provisions. Nonetheless, if plaintiffs again bring claims based on the same or virtually the same factual allegations, which the court has already ruled as insufficient, the court will dismiss these claims with prejudice.

The Insurance Defendants move to dismiss plaintiffs' malicious prosecution claims on several grounds. First, they argue that the claim fails because of this court's December 24, 2009 decision on qualified immunity. Second, they argue that the claim should be dismissed because they had a good faith belief that MUAs were illegal. Last, they argue that claims should be dismissed because plaintiffs have not established a favorable termination of their criminal prosecutions. The court will address each argument in turn.

### a. Effect of Decision on Qualified Immunity

In the court's December 24, 2009 order, the court did not, as the Insurance Defendants contend, hold that plaintiffs criminal prosecutions were brought with probable cause. The court does, however, recognize that the language it used in its holding was ambiguous. The court intended the language to express that because the law was not clearly established as to the legality of MUAs, the government defendants could have reasonably believed there was a legal basis for their claim. Reasonability under qualified immunity is not a defense for non-government employees. Further, the court has reconsidered its ruling on probable cause under *Awabdy v. City of Adelanto,* 368 F.3d 1062 (9th Cir.2004).

The Insurance Defendants also argue that this claim should be dismissed because there are no allegations that Reynolds "pressured or otherwise improperly influenced the decision by the DA's Office to bring criminal charges." This is simply false. Plaintiffs' complaints allege in great detail how Reynolds improperly influenced the San Joaquin district attorney's office.

### b. Good Faith Defense

The Insurance Defendants also argue that this claim should be dismissed because of the good faith defense. This defense is subjective, and based on factual findings. As such, is not properly resolved as part of the instant motion.

Private persons who act under the color of law may assert a good faith defense to a § 1983 claim. *Clement v. City of Glendale,* 518 F.3d 1090, 1096–1097 (9th Cir.2008); *see also Richardson v. McKnight,* 521 U.S. 399, 413, 117 S.Ct. 2100, 138 L.Ed.2d 540 (1997) (The Supreme Court has not foreclosed the possibility of an affirmative good faith defense in § 1983 actions.). Unlike qualified immunity, a good faith defense "depends on the subjective state of mind of the private person." *Robinson v. City of San Bernardino Police Dept.,* 992 F.Supp. 1198, 1207 (C.D.Cal.1998) (internal citation omitted). The court's earlier finding that an objectively reasonable prosecutor could have believed MUAs were unlawful is not dispositive of the subjective element of the Insurance Defendant's good faith defense.

The defendant's subjective state of mind, as part of the affirmative defense of good faith, overlaps with the plaintiffs' burden. To succeed on a malicious prosecution claim under Section 1983 plaintiffs must prove, among other things, that the prosecution was brought with malice and without probable cause. *See Womack v. County of Amador,* 551 F.Supp.2d 1017, 1031 (E.D.Cal.2008). In the Ninth Circuit, the defendant asserting the defense of good faith bears the burden of establish their good faith. *Jensen v. Lane County,* 222 F.3d 570 (9th Cir.2000) (leaving open the possibility that private defendant has an *affirmative* good faith defense to a section 1983 claim); *Robinson v. City of San Bernardino Police Dept.,* 992 F.Supp. 1198, 1207 (C.D.Cal.1998) (holding that defendant *established* her good faith). If the Insurance Defendants are to prevail on a good faith defense they bear the burden of establishing that they did not know, and should not have known, that

MUAs were legal as well as that they did not act with malice. Plaintiff has alleged facts in support of both of these elements. Accordingly, defendants motion to dismiss is denied on this ground.

### c. Favorable Termination

■ The Insurance Defendants argue that the malicious prosecution claim must fail because plaintiffs have not alleged facts establishing that their prosecutions were favorably terminated as required for such claims. They argue that plaintiffs' criminal prosecutions did not result in favorable legal determinations. Plaintiffs allege that their criminal prosecutions were dismissed pursuant to California Penal Code Section 1385(a), which authorizes a judge to order an action dismissed in furtherance of justice.

Defendants rely on *Womack v. County of Amador* for the proposition that a Section 1385(a) dismissal is generally not deemed a favorable termination because it reflects ambiguously on the merits, leaving open the question of guilt or innocence. 551 F.Supp.2d 1017, 1033 (2008). However, the Ninth Circuit has held dismissal qualifies as a favorable termination only "if it reflects the opinion of the prosecuting party or the court that the action lacked merit or would result in a decision in favor of the defendant." *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1068 (9th Cir.2004). The court continued, "When such a dismissal is procured as the result of a motion by the prosecutor and there are allegations that the prior proceedings were instituted as the result of fraudulent conduct, a malicious prosecution plaintiff is not precluded from maintaining his action unless the defendants can establish that the charges were withdrawn on the basis of a compromise among the parties or for a cause that was not inconsistent with his guilt." *Id.* Thus, at this stage, plaintiffs need only allege facts showing that there is a possibility that the charges were dismissed because of doubts about their legitimacy or the plaintiffs' guilt for the claim to survive a motion to dismiss.

Plaintiffs assert that the criminal actions against them were terminated favorably by dismissal of all charges, and defendants have not presented any judicially noticeable evidence to the contrary. Thus, plaintiffs have stated a claim for malicious prosecution under Section 1983 and state law, and the Insurance Defendants' motion to dismiss is denied as to this claim.

### D. Reynolds and Travelers' Motion for Judgment on the Pleadings as to Ambrose's First Amended Complaint.

The Insurance Defendants seek judgment as to plaintiff Ambrose's malicious prosecution claim under Section 1983 based on the same arguments discussed in the section above. Their motion is similarly denied on the same grounds.

The Insurance Defendants also argue that Ambrose's conspiracy claim fails as a matter of law. This argument also relies on the argument of which the court disposed above that the conspiracy claim fails because the criminal proceedings were supported by probable cause. As discussed above, this court did not hold that the criminal proceedings were supported by probable cause, and this court has reconsidered whether the government defendants could have reasonably believed that they were acting with probable cause. Accordingly, the Insurance Defendants' motion for judgment on the pleadings is denied.

### IV. CONCLUSION

For the foregoing reasons the court DENIES plaintiffs Yates, Sausedo, Vaezi, and Origel's motions for reconsideration as to whether it was clearly established that the

performance of MUAs was lawful under California law, Doc. Nos. 74, 76.

The court GRANTS plaintiffs Yates, Sausedo, Vaezi, and Origel's motions for reconsideration as to whether they have stated claims for malicious prosecution as to defendant Coffey. Coffey's original motions to dismiss this claim, Doc. 47, is now denied.

The court further GRANTS IN PART Defendants County, Weydert, and Coffey's motion to dismiss Plaintiffs Yates's, Origel's, and Sausedo and Vaezi's amended complaints, Doc. No. 69. As to this motion the court dismisses with prejudice all claims against County. The court also dismisses Sausedo and Vaezi's malicious prosecution claims under state law against Weydert and Coffey.

Further, the court GRANTS IN PART Defendants Travelers and Reynolds' motion to dismiss Plaintiffs Yates's, Origel's, and Sausedo and Vaezi's amended complaints, Doc. No. 71. The court dismisses these plaintiffs' false arrest claims under 42 U.S.C. § 1983. The motion is otherwise denied.

The court also DENIES Defendants Travelers and Reynolds' motion for judgment on the pleadings as to Plaintiff Ambrose's first amended complaint, Doc. 80.

Lastly, Plaintiffs Yates's, Origel's, and Sausedo and Vaezi's shall file amended complaints consistent with this order within twenty-one (21) days of the issuance of this order. These amended complaints must clearly lay out as separate causes of action each theory of liability under Section 1983. In these separate causes of action, plaintiffs must identify the conduct of each defendant, that is not protected by any privilege, which plaintiffs allege caused each specific constitutional deprivation. Plaintiffs are cautioned to review this court's previous orders when drafting these complaints to avoid bringing claims

the court has already held to be legally insufficient.

IT IS SO ORDERED.